Robert Anderson
4908 Roger Drive
Anchorage, Alaska 99507
Phone (907) 223-1579
aktaxappeal@gmail.com



RECEIVED

JUN 04 2021

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROBERT ANDERSON, )<br>)<br>Plaintiff, )<br>Pro Se )<br>)<br>v. )<br>)<br>MUNICIPALITY of ANCHORAGE, )<br>)<br>Defendant. )<br>_____ ) | Case No. 3:21-cv-00139-JMK<br><br>Jury Trail Demand |

## COMPLAINT

1.    At all times relevant to this Complaint, Anchorage collectively referees to defendant's employees, agents, and officers, who acted under color of statute, regulation, custom, ordinance, policy or usage made by its lawmakers or by those whose edicts or acts represent official policy.

1

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

## JURISDICTION AND VENUE

2. The civil rights actions raises federal questions under the United States Constitution, particularly the fourth, fifth and fourteenth amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4. This Court has authority to issue the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57; the requested injunctive relief under 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65; the requested damages under 28 U.S.C. § 1343; and reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

5. Venue lies in this district pursuant to 28 U.S.C. § 1391(b) because all events giving rise to the claims detailed here occurred within the District of Alaska and the Defendant is a municipal corporation in the District of Alaska.

## PLAINTIFF

6. Plaintiff is a citizen of the United States and Alaska, a property owner and real property ad valorem taxpayer residing at 4908 Roger Drive, Anchorage, Alaska .

## DEFENDANT

7. The Municipality of Anchorage ("Anchorage") is a home rule municipality organized under the laws of the State of Alaska, and is subject to suit under AS

2

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

§29.35.010 and the common law.

8.    All actions taken by Defendant, including the violations of the Plaintiff's constitutional rights, were the result of a statute, policy, custom, ordinance, regulation, or decision officially adopted and promulgated by Defendant and/or their officers and were actions also taken under color of law by policy and/or decision makers.

## ALLEGATIONS A

9.    Plaintiff's is owner, and has continuously owned since 1989, tax parcel Homestead Acres, BLK 3 LT 36, Tax Parcel 009-196-19-000, street address 4908 Roger Drive in the tax jurisdiction of Anchorage.

10.    Plaintiff's residence and principal place of adobe since October 1989 has been 4908 Roger Drive, Anchorage, Alaska 99507.

11.    Anchorage, through assembly ordnance, enacts a tax obligation on plaintiff's tax parcel annually.

12.    Plaintiff filed property tax appeals for several years in the 1990's and early 2000's on plaintiff's residence and principal place of adobe located at 4908 roger drive, Anchorage, Alaska.

13.    Plaintiff became concerned regarding activities of the department of finance in regard to U.S. Constitutional 4th Amendment rights while attending Anchorage board of equalization tax appeal hearings.

14.   Anchorage has at times attempted to gain access to plaintiff's property by consent since 1997, Anchorage property tax Appeal #0073, December 4, 1997 letter and property tax appeal #197, March 31, 1999 and December 6, 1999 letters and Anchorage telephone message May 11, 1999.

15.   Anchorage department of finance "Hand Delivered" board of equalization documents to plaintiff on December 29, 1999 triggering two letters to Anchorage dated January 4, 2000.

16.   Plaintiff considered the hand delivery on December 29, 1999 a violation of plaintiff's 4th Amendment expectation of privacy, Anchorage department of finance conducted a open door plain view search of the interior of plaintiff's residence without consent.

17.   When a random knock at a private residential property visitor entrance door by a department of finance agent is answered by whomever may open the door the department of finance agent sees some portion of the interior amounting to a search, *Payton v. New York,* 445 US 573, 577 (1980), young boy opens the door of private dwelling allowing officers to search the interior of the private dwelling.

18.   On several occasions prior to December 29, 1999 Anchorage department of finance personnel entered plaintiff's tax parcel to gather information without prior knowledge or consent of plaintiff including on or about August 26, 1998 and December 11, 1997.

4

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

19. Plaintiff's January 4, 2000 letter to the ombudsman, a official of the Anchorage legislative branch, informed Anchorage the 4th Amendment to the U.S. Constitution governs department of finance policy of gathering of information on private property.

20. A copy of plaintiff's January 4, 2000 letter to the ombudsman is attached hereto as exhibit 1 and incorporated herein by reference.

21. Plaintiff's January 4, 2000 notarized notice to the mayor, chief executive officer of the Anchorage executive branch, removed any implied license for department of finance property appraisal division personnel to enter plaintiff's property for any purpose without prior written consent.

22. A copy of plaintiff's January 4, 2000 letter to the mayor is attached hereto as exhibit 2 and incorporated herein by reference.

23. The "right to exclude" is a recognized fundamental property right, *Kaiser Aetna v. United States,* 444 US 164, 179-180, (1979).

24. Plaintiff's January 4, 2000 notarized notice to the mayor, chief executive officer of the executive branch, explicitly required prior written consent for department of finance property appraisal division personnel to physically intrude onto plaintiff's 8,200 square foot tax parcel.

25. By letter dated January 31, 2000 the municipal ombudsman represented Anchorage department of finance property appraisal division personnel would obtain

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

written permission prior to physical intrusion onto plaintiff's tax parcel.

26. A copy of defendants January 31, 2000 letter to the ombudsman is attached hereto as exhibit 3 and incorporated herein by reference.

27. The Anchorage department of finance is a executive branch department.

28. The division of property assessment is a division within the department of finance, the division is also referred to as the property appraisal division.

29. The assessor is head of the division of property assessment with responsibilities defined in Anchorage Municipal Code §12.05.045.

30. Anchorage department of finance has no life, health or safety police power code enforcement duties.

31. Anchorage department of finance has no administrative enforcement duties beyond civil collection of monies, their divisions are Controller, Property Appraisal, Public Finance & Investment and Treasury.

32. Anchorage department of finance functions as they relate to plaintiff are annual appraisal valuation of plaintiff's tax parcel, annual determination of the continued residential exemption status of plaintiff's tax parcel and the ministerial duty of collection of the tax obligation fixed by the assembly tax levy ordnance plus interest and penalty when applicable.

33. The Anchorage ombudsman's January 31, 2000 letter states Anchorage department of finance acts under authority of Alaska Statute §29.45.130(b) when

6

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

physically intruding on private residential property for the purpose of gathering information.

34.    The substance and essence of Anchorage policy, substantially unchanged between the Anchorage ombudsman's January 31, 2000 letter and July 11, 2019, is to conduct a open door plain view search of the interior of a private residential dwelling when a knock is answered or a implied consent search of the premises when a knock is not answered.

35.    The Anchorage ombudsman's January 31, 2000 letter represents the term "premise" is used in Alaska Statute §29.45.130(b), the word premise does not appear in the statute in effect on January 4, 2000, the effective date of the current Alaska Statute §29.45.130(b) is March 27, 1999.

36.    Anchorage treats private residential property as public property to be entered and searched at the will of Anchorage department of finance without regard to plaintiff's expectation of privacy or the explicit 4th Amendment securities provided ones house, trespass by Anchorage department of finance, statutory or otherwise, is limited to the "open fields" doctrine where 4th Amendment protections do not apply, see *Oliver v. United States*, 466 US 170, 177 (1984).

37.    The ombudsman's January 31, 2000 letter states Anchorage department of finance policy is to gather information, preform a 4th Amendment search, when attempted contact by a appraisal data collector is unsuccessful, as is said in *Boyd v. United States,*

7

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

116 US 616, 635 (1886) "It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be obsta principiis.".

38.     On investigation and belief, Anchorage taxpayer's inquiring or complaining about Anchorage's policy are informed of the representation made to plaintiff in the ombudsman's January 31, 2000, Anchorage is acting under State trespass authority, Alaska Statute §29.45.130(b),   when entering private residential tax parcels for the purpose of gathering information and no consent is necessary when attempted contact with whomever occupies the residence is unsuccessful, Anchorage states on it's property appraisal                      internet                      web                      page, http://muni.org/Departments/finance/property_appraisal/Pages/defalt.aspx  on  9/30/2019 "We are *required by State law* to make and independent estimate of value each year and *visit each property at least once every six years*", emphases added.

39.     Alaska Statute §29.45.130 creates no obligation by a municipal corporation to enter private residential property for data collection.

40.     Alaska Statute §29.45.130 effective March 27, 1999

Sec. §29.45.130. Independent investigation.

> (a) The assessor is not bound to accept a return as correct. The assessor may make an independent investigation of property returned or of taxable property on which no return has been filed. In either case, the assessor may make the assessor's own valuation of the property subject to an ad valorem tax and this valuation is prima facie evidence of the

value of the property.

   (b) For investigation, the assessor or the assessor's agent may enter real property during reasonable hours to examine visible personal property and the exterior of a dwelling or other structure on the real property. The assessor or the assessor's agent may enter and examine the interior of a dwelling or other structure or the personal property in it only (1) if the structure is under construction and not yet occupied; (2) with the permission of a person in actual possession of the structure; or (3) in accordance with a court order to compel the entry and inspection. The assessor or the assessor's agent may examine all property records involved. A person shall, on request, furnish to the assessor or the assessor's agent assistance for the investigation and permit the assessor or the assessor's agent to enter a dwelling or other structure to examine the structure or personal property in it during reasonable hours. The assessor may seek a court order to compel entry and production of records needed for assessment purposes.

   (c) An assessor may examine a person on oath. On request, the person shall submit to examination at a reasonable time and place selected by the assessor.

*Marshall v. Barlow's, Inc.*, 436 US 307, 325 (1978) "... the Act is unconstitutional insofar as it purports to authorize inspections without warrant or its equivalent..." is relevant as inspections and examinations both involve a gathering of information, no AS §29.45.130 warrant procedure exist or is required for exterior examination of a dwelling leaving consent, meaningful only when given prior to entry onto 4th Amendment protected private property, as the only means available to Anchorage and while inspections by Anchorage department of finance data collectors on private property where the general public is invited such as businesses open to the public may or may not be unconstitutional, plaintiff's tax parcel is a single family residential property not a

9

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

business tax parcel open to the public.

41.     On or about July 11, 2019 Defendant's department of finance agent, as defined under Alaska Statute (AS) Sec. §29.45.130, entered plaintiff's property without written consent.

42.     Anchorage's agent is a department of finance data collector, entry onto plaintiff's property was for the purpose of gathering information.

43.     The data collector visited every single family residential property on roger drive on or about July 11, 2019, of the 24 single family tax parcels eleven owner occupants were interviewed and on thirteen properties no interview was conducted.

44.     Anchorage annually interviewing a small portion of owner occupants does not substantially advance a legitimate state interest, the assessor is required to determine annually residential owner occupancy tax exemption status, Anchorage attempts to visits properties on a six year cycle, at approximately a 50% response rate to a door knock and a six year cycle Anchorage is confirming less than 10% of the required residential owner occupancy tax exemptions and not doing so timely as exemption status must be determined prior to the annual Anchorage assembly tax levy ordnance in order to establish the mill rate applicable to each tax parcel within Anchorage's tax jurisdiction.

45.     No attempt was made by the department of finance to interview owner occupant, plaintiff, at a later date after no contact was made on July 11, 2019.

46.     Anchorage's physical intrusion on plaintiff's tax parcel to attempt contact on

10

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

July 11, 2019 was to gather information, a answer to a random door knock permits a data collector a plain view of a portion of the interior of a private dwelling, no contact is treated as implied consent to search under Anchorage policy.

47.     Anchorage's agent followed the finance department policy or custom stated in Alan Muise, municipal ombudsman's letter January 31, 2000, attempt contact with whomever and if there is no contact conduct a search of premises which includes the house and curtilage in the case of plaintiff's single family residential tax parcel.

48.     Plaintiff did not acknowledge any attempted contact from Anchorage's appraisal data collection agent on July 11, 2019.

49.     Upon investigation and belief, Anchorage's agent entered the front yard, side yard and backyard curtilage of plaintiff's dwelling without any consent having been given to physically intrude onto plaintiff's tax parcel.

50.     Anchorage's agent conducted a search within the meaning of the 4th Amendment to the U.S. Constitution.

51.     Anchorage's agent  in conducting the 4th Amendment search acted under Anchorage policy, custom or final decision by a Anchorage policy maker.

52.     Anchorage's agent placed a PROPERTY APPRAISAL Data Review Inquiry door hanger, form 44-048 Ver. 3_99*, on plaintiff's dwelling main entry door.

53.     A copy of defendants POPERTY APPRAISAL Data Review Inquiry door hanger as found on plaintiff's private dwelling visitor entry on July 11, 2019 is attached

hereto as exhibit 4 and incorporated herein by reference.

54.     The right to exclude handbilling, in and of itself, is a recognized fundamental property right, *Lloyd Corp. v. Tanner*, 407 US 551, 570, (1972), any debate regarding Anchorage, not a natural person within the meaning of the 14th Amendment, 1st Amendment speech rights on private residential property can never be overcome, *Lloyd Corporation* claimed 5th and 14th Amendment rights when the general public is invited onto private property, plaintiff explicitly excluded Anchorage department of finance from entry onto plaintiff's private residential property without prior written consent under the 4th, 5th and 14th Amendments, at no time prior to July 11, 2019 did Anchorage challenge plaintiff's exercise of those U.S. Constitutional rights.

55.     The door hanger included a business card identifying I-SHAN SONG as a senior appraiser of the department of finance.

56.     I-Shan Song or a Anchorage agent representing them self to be I-Shan Song conducted the July 11, 2019 search.

57.     I-Shan Song conducted the July 11, 2019 search.

58.     The door hanger contained areas for the appraiser to provide estimates and questions, no information was filled in on the door hanger.

59.     Anchorage's policy and custom is stated in January 31, 2000 letter from the Anchorage Office of the Ombudsman, Anchorage acted under authority of AS Sec. §29.45.130 (b) when entering plaintiff's private residential tax parcel on July 11, 2019 to

12

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

gather information.

60.     Plaintiff's 4th amendment "zone of privacy" and expectation of privacy was clearly established in plaintiff's January 4, 2000 letters to the ombudsman and mayor, both of whom are government officials of Anchorage.

61.     Anchorage did not dispute plaintiff's 8,200 square foot tax parcel consist of a private dwelling house and curtilage, protected areas under the 4th amendment when agreeing not to enter plaintiff's tax parcel without prior written consent, examination of plaintiff's dwelling house from a public street or "open field" is not before the court.

62.     Plaintiff's   January 4, 2000 letters to the ombudsman and mayor where based on clearly established constitutional law, search of private dwelling or curtilage by department of finance appraisal data collector without contest or warrant is unreasonable.

63.     "The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws.", *Agnello v. United States,* 269 US 20, 32 (1925).

64.     The 4th Amendment guarantee against unreasonable searches is not determined by AS Sec. §29.45.130 (b)'s regulating of trespass, *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 US 388, 394 (1971), "The interests protected by state laws regulating trespass and the invasion of privacy, and those protected by the Fourth Amendment's guarantee against unreasonable searches and seizures, may be inconsistent or even hostile.", Anchorage's interpretation of AS Sec. §29.45.130 (b) is clearly hostile to plaintiff's single family residential property.

13

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

65. "A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.", *United States v. Jacobsen,* 466 US 109, 113 (1984).

66. A stealthy entrance under AS Sec. §29.45.130 (b) onto a private residential property curtilage is equivalent to an entry by force, *Olmstead v. United States,* 277 US 438, 463-464, (1928).

67. Private property under the 4th Amendment consist of two mutually exclusive distinct areas, the "zone of privacy" private dwelling and curtilage 4th Amendment protected area and the open fields unprotected area, a private parcel of land is not required to contain both types of areas.

68. *Katz v. United States*, 389 U. S. 347 (1967) analysis is inapplicable, Anchorage is gathering information by physical intrusion into plaintiff's constitutionally protected single family private dwelling and curtilage, Katz reasonable expectation of privacy test applies to what a person seeks to preserve as private in a area accessible to the public.

69. *United States v. Jones,* 565 U. S. 400, 409 (2012) "But as we have discussed, the Katz reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test.", emphasis by court.

70. Plaintiff's tax parcel has no open field area where trespassory is permitted, the open fields doctrine that an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers was reconfirmed in

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

*Oliver v. United States*, 466 US 170, 181 (1984).

71.    A 4th amendment "zone of privacy" is clearly established in *Florida v Jardines*, 569 US 1,8 (2013), when entry to protected areas of a private residential property by government agents is desired and the government agent has an implied license, the government agent may approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave.

72.    The Anchorage department of finance data collector was not in possession of a implied license on July 11, 2019 when entry was made onto plaintiff's tax parcel.

73.    *Grady v. North Carolina*, 135 S.Ct. 1368, 1371 (2015) makes *Jardines* applicable to noncriminal government physical intrusions upon protected areas.

74.    It is well established long before the *Jardines* decision that government physical intrusion into a privacy zone's protected area for the purpose of gathering information without consent or warrant is unreasonable, *Wyman v. James*, 400 US 309, 317 (1971):

> "In Camara MR. JUSTICE WHITE, after noting that the "translation of the abstract prohibition against `unreasonable searches and seizures' into workable guidelines for the decision of particular cases is a difficult task," went on to observe,
>
> "Nevertheless, one governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is `unreasonable' unless it has been authorized by a valid search warrant." 387 U. S., at 528-529.".

15

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

75.     Plaintiff's January 4, 2000 letters to the mayor and ombudsman served proper notice to Anchorage in every manner, shape and form 4th Amendment U.S. Constitutional rights are implicated when Anchorage department of finance data collectors conduct a search on private single family residential property within the tax jurisdiction of Anchorage.

76.     Anchorage's policy and custom upon entry onto private residential property is to attempt contact and if not received in some cases arbitrarily enter the curtilage beyond the front path area and gather information without the knowledge or consent of the private dwelling occupant.

77.     Anchorage has at times identified plaintiff's tax parcel as a tax parcel to which Anchorage desires additional data.

78.     Data collection of property improvements is a form of reevaluation under Alaska Statute Section §29.45.150. requiring assembly resolution or act, AS §29.45.150:

> A systematic reevaluation of taxable real and personal property undertaken by the assessor, whether of specific areas in which real property is located or of specific classes of real or personal property to be assessed, shall be made only in accordance with a resolution or other act of the municipality directing a systematic reevaluation of all taxable property in the municipality over the shortest period of time practicable, as fixed in the resolution or act.

79.     The Anchorage assembly, through resolution or other act, has never

16

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

identified the specific area in which plaintiff's tax parcel is located as requiring reevaluation during plaintiff's ownership of the property.

80. The Anchorage assembly, through resolution or other act, has never identified the specific class in which plaintiff's tax parcel is classified by the State as requiring reevaluation during plaintiff's ownership of the property. .

81. Anchorage data collection policy cannot be reconciled with reevaluation law requirements, intervals between reevaluation can only be intended to address significant improvements such as living space additions to existing dwellings, new construction of dwellings or other activities requiring permits under building code enforcement laws, Anchorage requires no Alaska Statute Section §29.45.130 return by a property owner to notify the department of finance a significant real property improvement has occurred rendering entry onto private property unnecessary as any change in improvement appraisal value when a return is required for significant improvements can be determined in the first instance from the building permit.

82. Anchorage treated plaintiff differently from similarity situated home occupants who received defendant's agent, occupants who received defendant's agent were permitted to consent to a search to gather information beyond the initial open door interior plane view search or not consent to a search to gather additional information.

83. Anchorage made no request for written consent prior to entry of plaintiff's tax parcel on July 11, 2019.

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

84. The common law has never recognized availability of a administrative warrant for a search of a single family residential property to a taxing authority for real property appraisal data collection, the administrative warrant for a State's police powers such as health, safety and welfare found in *Camara v. Municipal Court of City and County of San Francisco*, 387 US 523, 534 (1967) has never been extend to the States sovereign power of ad valorem taxation.

85. Anchorage has never obtained a administrative search warrant under AS Sec. §29.45.130 (b).

86. Alaska has no administrative search warrant Statute for issuance of a search warrant for ad valorem date collection purposes.

87. Alaska State Court procedures for obtaining a administrative search warrant under AS Sec. §29.45.130 (b) do not exist as reasonable cause to prevent conditions hazardous to public health and safety is not the purpose of AS Sec. §29.45.130, the 4th Amendment requirement for any or all types of administrative search warrants can never be established to conduct data collection activities on a single family residential property.

88. The simplicity with which compliance is achieved when a implied license is available can not be ignored when a government agents right of entry exist, as *Florida v Jardines*, 569 US 1,8 (2013) stated "it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters".

18

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

## ALLEGATIONS B

89.     Plaintiff received a 2019 ad valorem tax bill for plaintiff's tax parcel 009 196 19 000.

90.     The second installment payment was due August 15, 2019.

91.     Plaintiff did not remit the proper amount of payment in the written words on the check thereby underpaying the amount due by $500.

92.     Plaintiff on August 28, 2019 received a bank statement indicating less than the expected debit amount on the tax payment to Anchorage.

93.     Plaintiff went to Anchorage city hall on August 29, 2019 to reconcile the account deficiency.

94.     A tax payment deficiency creates a cloud on a properties title for principle, interest, penalty and cost.

95.     Other recognized affects of a deficiency include it impairs the ability to sell or otherwise alienate the property; taints any credit rating and reduces the chance of obtaining a home equity loan, *Connecticut v. Doehr*, 501 US 1, 11, (1991) .

96.     At sometime after the real property ad valorem tax due date Anchorage provides notices through mailed written statements that accounts are delinquent, the notice indicates a total amount due inclusive of principal, interest and a Anchorage Municipal Code §12.15.060 (C) (1) (a) 10% penalty as allowed under Alaska Statute §29.45.250.

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

97. At no time did Anchorage notify plaintiff through written statement of a delinquency in account balance.

98. Plaintiff went to the treasury department cashier window to pay the balance due, Anchorage's computer system indicated a principle tax amount due of $499.99 and a penalty of $50.00.

99. Plaintiff explained the mistake plaintiff made of not including the "five hundred" in the written words of the check, the cashier indicated such a mistake is a common occurrence.

100. The cashier asked if plaintiff would like to discuss the penalty with the head cashier who has access to make changes, i.e. remove penalties, in the computer system.

101. Plaintiff spoke with the head cashier regarding the penalty, the head cashier explained in excruciating detail how to calculate the 10% penalty component of a $499.99 tax amount.

102. On investigation and belief, Anchorage, through it's head cashier, adjusted penalties of similarly situated taxpayer obligations between the final due date of 2019 taxes and the printing for mailing of delinquency notices.

103. Plaintiff paid the stated amount indicated as due, $549.99, and received a receipt document indicating a tax amount of $549.99 and no penalty amount.

104. A copy of plaintiff's August 29, 2019 receipt is attached hereto as exhibit 5 and incorporated herein by reference.

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

105. The tax amount due on plaintiff's tax parcel on August 29, 2019 was $499.99.

106. Plaintiff requested a receipt showing the correct amounts paid, $499.99 in tax and $50 penalty.

107. Plaintiff was provided a computer screen printout, date and time 8/29/19 13:12:41, indicating a principal amount due of $499.99 and a penalty amount due of $50, $0 interest and $0 cost, total $549.99.

108. A copy of plaintiff's August 29, 2019 computer printout is attached hereto as exhibit 6 and incorporated herein by reference.

109. Plaintiff paid and Anchorage received a payment of $499.99 in taxes due and $50 in penalty on August 29, 2019.

110. Alaska Statute §29.45.250 and Anchorage ordinance includes a interest component on unpaid taxes, collection of interest is not a disputed matter before the court.

111. Plaintiff's account on August 29, 2019 indicates $0 interest accrual between August 16, 2019 and August 29, 2019.

112. The Anchorage Municipal Code §12.15.060 (C) (1) (a) 10% penalty is a 14th Amendment confiscation of plaintiff's property subject to substantive and procedural due process.

113. A 10% penalty on a real property tax obligation is not a strict liability civil

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

offense, due process requires notice of the potential deprivation, a 14th Amendment "notice of delinquency" was never provided to plaintiff beyond the Anchorage treasury department cashier's August 29 verbal statement plaintiff's tax parcel account due amount was $499.99 principal and $50 penalty.

114.    Anchorage provides no opportunity to pay principal and interest prior to imposing a strict liability 10% penalty assessment.

115.    14th Amendment strict civil liability in collection of a tax delinquency penalty when interest on principal is accruing to Anchorage does not rise to the level of recognized 14th Amendment civil strict liability, *Morissette v. United States*, 342 US 246, 254 Footnote 13, (1952) "The development of strict criminal liability regardless of intent has been roughly paralleled by an evolution of a strict civil liability for consequences regardless of fault in certain relationships, as shown by Workmen's Compensation Acts...", Anchorage collection of penalty in addition to interest requires 14th Amendment substantive due process prior to the strict liability imposed under Anchorage ordnance §12.05.065.

116.    Alaska statutory law treats a ad valorem tax penalty as separate from the ad valorem tax obligation, *LOT 04B & 5C BLOCK 83 TOWNSITE v. Fairbanks North Star Borough*, 208 P. 3d 188, 194 (2009) "The statute treats the penalty as an amount separate from the original amount due, calculated from the original amount due and added to the original amount due only after the failure to pay on time."

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

117.    Anchorage accounting procedures allocate monies received, when no judicial proceeding cost are involved, first to the 10% penalty, second to interest and third to the principal tax, any account balance greater than $0 always has a unpaid ad valorem tax liability enforceable through judicial proceedings.

118.    Final resolution of a unpaid 10% penalty under judicial proceedings is a 4th Amendment seizure of real property, a tax deed issued to Anchorage by a court of competent jurisdiction under in rem proceedings.

119.    Anchorage annually purses judicial proceedings against unpaid real property tax obligations initially as a tax lien on the property which can be converted anytime after the statutory applicable waiting period to a tax deed issued to Anchorage.

120.    The 4th Amendment guarantees citizens the right to be secure against unreasonable seizures, Anchorage provides no opportunity to pay ad valorem tax principal and interest prior to 10% penalty addition, Anchorage requires the taxpayer pay the 10% penalty under duress and without 14th Amendment due process to avoid a cloud on the tax parcels title, payment of monies by plaintiff or seizure by Anchorage of the real property tax parcel are the only means of finally and completely resolving the matter.

121.    The 14th Amendment requires timely notice of potential deprivation, Anchorage has chosen to assess a penalty on delinquent real property tax obligations, it is within Anchorage's discretion when after the tax due date has passed to provide 14th Amendment notice of delinquency, a policy to calculate interest accrual monthly does not

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

change the 14th Amendment due process timely notice of a potential 10% penalty deprivation requirement.

122.   A 10% penalty is not in the nature of a regulatory law with general notice, notice and opportunity to the owner of record that a delinquency on a particular real property tax parcel exist is required under 14th Amendment due process.

123.   A general notice by ordnance §12.15.060 (C) (2) grace period after delinquency occurs does not create 14th Amendment strict liability for a 10% penalty without notice to the plaintiff and opportunity to pay principal and interest within reasonable time, typically 30 days.

124.   Ad valorem taxes are not a privilege tax for owning real property for a year, they are a taking of a portion of an individuals wealth for public purposes, a penalty is a separate taking, not a additional ad valorem tax or interest on a unpaid ad valorem tax obligation.

125.   Anchorage gives written notice of deliquesces at some point in time, to meet 14th Amendment due process no more is required than a reasonable opportunity for a taxpayer to pay principal and accrued interest by a reasonable future fixed date before 10% penalty is added to a taxpayer's obligation.

126.   Anchorage collected or through judicial foreclosure proceedings will collect in excess $1,000,000 in ad valorem tax penalties for the 2019 tax year, public interest in all taxpayers receiving 14th Amendment due process is a important matter.

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

127. The penalty is to encourage taxpayers to timely pay tax obligations, *North Slope Borough v. Sohio Petroleum Corp.,* 585 P. 2d 534, 546 (1978), the *Sohio* decision does not address 14th Amendment substantive due process, encouragement must be balanced against a right to avoid the penalty by timely paying principal and interest.

128. The 10% penalty is not a civil fine for a violation of the police powers of the government (life, health or safety) or for use the government owned property such as a metered street parking space where time has expired.

129. Settlement of unpaid real property ad valorem tax obligation is through taxpayer payment of delinquent principle, interest, penalty and tax lien enforcement cost or in rem foreclosure sale to recover delinquent principle, interest, penalty and tax lien enforcement cost, Anchorage is never at risk of not receiving monies properly due them as timely proceedings allow collection in full of any unpaid amounts less than two years after a ad valorem tax bill has been rendered.

130. A real property tax lien is a enforceable remedy under a implied land grant contract, *Lessee of Livingston v. Moore*, 32 US 469, 550 (1833), a 10% penalty is not a clause under that contract, the seizure of real property under the contract is considered reasonable within the 4th Amendment, a 10% penalty is a separate statutory taking scheme not a 14th Amendment authorized unilateral change order under the land grant contract.

131. A penalty on real property is included in the obligations enforceable through a Alaska Statute Title 29 Chapter 45 Municipal Taxation Article 2 Enforcement

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

of Tax Liens statutes though the penalty is not a tax.

132. Had plaintiff not paid the penalty demanded by Anchorage in rem foreclosure and deed transfer proceedings are the remedy available to Anchorage, AS §29.45.295, in effect plaintiff could lose plaintiff's home over a $50 penalty, in a 18 month period (six months after due date a judicial judgment and decree on unpaid principle, interest, penalty and cost plus one year waiting period before court issued tax deed to Anchorage) without ever receiving timely due process notice and opportunity to remedy a 14th Amendment taking of property, the 10% penalty.

133. Objections under AS §29.45.370 require a taxpayer to wait until Anchorage has petitioned the Superior Court for a Judgment and Decree of Foreclosure and while AS §29.45.370 provides opportunity it does not meet 14th Amendment due process under *Mathews v. Eldridge,* 424 US 319, 333 (1976) "The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."" criteria.

134. The Anchorage department of finance ministerial duty of collection of ad valorem taxes, interest, penalties and cost are constrained by the 14th Amendment.

135. Anchorage ordnance §12.05.065 – Tax penalty waiver is not 14th Amendment due process, plaintiff did not receive notice a waiver is available and catastrophic occurrence is not a appropriate standard for adding a 10% penalty to a real property ad valorem tax bill, §12.05.065 addresses Anchorage administrative errors

(failure to present a original tax bill to the owner of record at the address specified) and real properties where no real person (a deceased individual cannot own real property) owner of record exist , a no fault opportunity to pay principal and interest upon notice a delinquency exist is not part of the process.

136. Anchorage ordnance §12.05.065 - Tax penalty waiver as adopted, No. AO 2017-106 found taxpayers are subjected to a "significant penalty" when a 10% penalty is added to a real property ad valorem tax bill;

> WHEREAS, despite the above referenced taxpayer duties and available technology-based tools to help avoid late payment of real property taxes, catastrophic circumstances may arise that cause the taxpayer to miss paying their residential real property taxes on time and in full, thereby subjecting them to a significant penalty; now, therefore,...

the Anchorage assembly makes no mention 14th Amendment due process is required when the government confiscates taxpayer 10% penalty monies.

137. It is settled, indisputable law that a taking of a citizens property interest requires 14th Amendment due process, the Anchorage assembly members acted as the final decision maker on 10% penalty preforming a determination function prior to enacting Anchorage ordnance §12.05.065 in 2017, *Wood v. Strickland*, 420 US 308, 321-322, (1975) assumes the assembly showed a "high degree of intelligence and judgment" in addressing constitutional rights, Anchorage ordnance §12.05.065 finding that a penalty is a "significant" amount cannot be reconciled with the strict liability and lack of

opportunity for judicial review of the chief finical officers final decision.

138.   Plaintiff received no notice Anchorage ordnance §12.05.065 is a remedy under a AS 29.45.250 penalty 14th Amendment taking of property, stating on a tax bill a 10% penalty will be charged to the unpaid balance rises to nothing above a gesture of general law notice, Anchorage is a political subdivision of the State of Alaska created for a more ordered form of government not a credit card issuer providing services under a mutual agreement.

139.   "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.", *Mullane v. Central Hanover Bank & Trust Co.*, 339 US 306, 315, (1950), Anchorage offers nothing more than a nonjudicial grievance process.

140.   Anchorage ordnance §12.05.065 waiver process final determination a 10% penalty is due is a catastrophic occurrence exception to strict liberality, opportunity to pay principal and interest by a prescribed date after notice to taxpayer is required by the 14th Amendment, the catastrophic occurrence waiver process may meet 14th Amendment due process substantive requirements for taxpayers who after receiving notice a delinquency on their tax parcel exist do not pay the principal and the delinquency interest timely to avoid a 10% penalty addition.

141.   Anchorage made an administrative error on plaintiff's 2015 tax bill,

Anchorage in violation of State statute changed plaintiff's mailing address, plaintiff did not receive a tax bill until well after the 1st installment due date, a delinquency notice was sent to plaintiff's correct address prior to plaintiff receiving the actual tax bill as plaintiff demanded Anchorage provide a original tax bill to create a payment obligation, plaintiff made no appeal to the chief finical officer or assembly under the previous penalty appeal ordnance and yet the penalty and interest were adjusted to $0, arbitrary discretion in procedure is not due process.

142.   Anchorage ordnance §12.05.065 provides no due process fundamental fairness to plaintiff who received no written notice of delinquency, notice to the party effected is a fundamental element of 14th Amendment due process.

143.   Anchorage interest in timely payment of ad valorem taxes must be balanced against taxpayer's 14th Amendment right to notice and opportunity with due consideration to the remedy Anchorage receives of a tax deed to the real property when a 10% penalty goes unpaid.

144.   Anchorage is not required to assess a penalty, Anchorage by choosing to due so must provide 14th Amendment due process, both procedural and substantive.

145.   A 14th Amendment due process hearing requires government evidence to support a 10% penalty taking of property, by failing to provide a 14th Amendment due process hearing Anchorage avoids the issue of producing evidence of notice to a taxpayer that a ad valorem tax parcel payment is delinquent, without strict liability a delinquency

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

requires reasonable opportunity to pay principal and interest prior to a penalty becoming irrevocably fixed thru a 14th Amendment hearing judicial decision.

146.   The court consistently has held that some form of hearing appropriate under the circumstances is required before an individual is finally deprived of a property interest, *Wolff v. McDonnell,* 418 U. S. 539, 557-558 (1974), a decision on a waiver application applying strict liability is not a 14th Amendment valid procedure appropriate to the significant penalty monies Anchorage receives when they choose to add a 10% penalty to principal and interest ad valorem tax balance.

147.   Plaintiff's sole obligation under the 14th Amendment as a property owner is to maintain a current mailing address to be utilized by Anchorage when the assembly enacts a law creating a   irrevocably fixed ad valorem tax obligation thus allowing Anchorage to render a original tax bill to plaintiff, Anchorage ordnance §12.05.065 creates obligations plaintiff knows the due date of taxes not yet levied under any law, has knowledge if the law enacting a  irrevocably fixed ad valorem tax obligation modified the due date created in §12.05.065, has knowledge Anchorage did not receive timely payment of the principal amount due under the tax obligation and has knowledge a nonjudicial grievance process not meeting 14th Amendment due process exist, a 10% penalty, deemed a substantial taking of monies by the Anchorage assembly, requires notice and opportunity consistent with the circumstances, in the first instance substantive due process to pay principal and accrued interest within a reasonable time after notice a

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

delinquency exist and a judicial process when timely payment of principal and accrued interest has not been received.

## ALLEGATIONS OF LAW

148. At all times relevant to this Complaint, each and all of the acts alleged here are attributable to Defendant, who acted under color of a statute, regulation, policy, custom, ordinance, or usage of the Municipality of Anchorage.

149. Plaintiff currently suffers imminent and irreparable harm because of Defendants' actions that violate plaintiff's constitutional rights.

150. Plaintiff has no adequate or speedy remedy at law for the loss of its constitutional rights.

151. Unless Defendants' conduct is enjoined, plaintiff will continue to suffer irreparable injury.

## CLAIM I

### Forth Amendment Unreasonable Search

152. Plaintiff repeats and realleges each allegation contained in paragraphs 1 thru 88 and paragraphs 148 thru 151 of this complaint.

153. Anchorage department of finance policy or custom and practice is to enter private residential property without consent or implied license from plaintiff.

154. Anchorage department of finance policy or custom and practice were

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

implemented with full knowledge of AS 29.45.130.

155. Anchorage department of finance data collector gathered information while on plaintiff's private residential property.

156. A Anchorage department of finance data collector identifying them self as I-Shan Song entered plaintiff's tax parcel on or about July 11, 2019 and gathered information for government purposes.

157. I-Shan Song acted under Anchorage policy or custom and practice indicated to plaintiff in the January 31, 2000 ombudsman letter, exhibit 3.

158. A United States citizens private dwelling, home and curtilage, is the most protected privacy zone in the world.

159. Property valuation data collection on private single family residential property is not a life, health or safety government interest within the meaning of the 4th Amendment administrative search doctrine which requires reasonable cause to obtain a warrant to enforce life, health and safety matters when no consent to search is given.

160. The Forth Amendment of the United States Constitution protects plaintiff's right to a zone of privacy, the dwelling and curtilage referred to as the "house" under the 4th Amendment is explicitly protected.

161. Anchorage received constructive notice on January 5, 2000 of the limits of plaintiff's 4th Amendment protected zone of privacy, there are no *Oliver v. United States,* 466 US 170 (1984) "open field" areas on plaintiff's tax parcel, plaintiff demonstrated in

32

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

the clearest form possible plaintiff's actual 4th Amendment personal expectation of privacy on plaintiff's private single family residential property.

162. Anchorage did not dispute plaintiff's 4th Amendment right against unreasonable searches when it agreed to obtain written consent prior to entry onto plaintiff's tax parcel in it's January 31, 2000 letter, see Exhibit 3.

163. Anchorage's deliberate indifference to constructive notice by plaintiff to officials of the legislative and executive branches of Anchorage government and failure to adopt adequate policies or customs to protect plaintiff's Constitutional rights resulted in the July 11, 2019 unreasonable search violation.

164. Plaintiff's expectation of privacy is reasonable, the concept of private property rights is clearly established in law, no reasonable cause can ever exist for a tax assessor to obtain a search warrant in a court of competent jurisdiction and society has never issued an open invitation for tax assessors to show up randomly and pound on private dwelling doors to chit chat with "whomever" may answer a knock much less gather information when "whomever" dose not answer a knock.

165. 14th Amendment due process issuance of a search warrant by a court of competent jurisdiction is not available for single family residential private property valuation data collection, only consent prior to entry is available to Anchorage department of finance.

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

## CLAIM II

### 5th & 14th Amendment Right to Exclude

166.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 thru 88 and paragraphs 148 thru 151 of this complaint.

167.    The right to explicitly remove any presumed or implied license of a government entity with no life, health or safety responsibilities to enter private residential property is a fundamental property right.

168.    Anchorage received notice on January, 4, 2000, exhibit 2, department of finance 4th Amendment common-law trespassory on plaintiff's tax parcel requires prior written consent from plaintiff.

169.    Anchorage neither request nor received consent from plaintiff prior to July 11, 2019 entry onto plaintiff's tax parcel.

170.    Plaintiff's tax parcel consist entirely of a dwelling house and curtilage, no open fields exist within plaintiff's tax parcel.

171.    The right to exclude other is a recognized property right, a taking occurs when government treats plaintiff's private property as public property which can be entered by Anchorage appraisal data collects arbitrarily at will.

172.    Anchorage violated plaintiff's 5th and 14th Amendment right to exclude substantively and procedurally by stating Anchorage would not enter plaintiff's tax parcel and then entering plaintiff's tax parcel without prior consent.

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

## CLAIM III

## 14th Amendment Equal Protection

173. Plaintiff repeats and realleges each allegation contained in paragraphs 1 thru 88 and paragraphs 148 thru 151 of this complaint.

174. Anchorage policy, custom and practice creates classifications of residential property owner's 4th Amendment rights, when a agent is in the field collecting data two classes exist, home occupants who answer a knock at the door and home occupants who do not answer a knock at the door.

175. A home occupant who answers a knock is given an opportunity to consent to further investigation by a data collector or deny a right to linger any longer.

176. Anchorage treats a failure to respond to a knock as implied consent to search.

177. A United States citizens single family residential home is the most protected area in the world against unwarranted government intrusion.

178. Anchorage policy, custom and practice discriminate against plaintiff (class of one) and all similarly situated single family home occupants not given a opportunity to demand department of finance agents leave the property without gathering further information.

179. The 4th Amendment "zone of privacy" is a fundamental right protected by

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

strict scrutiny under 14th Amendment equal protection discrimination.

180.　Anchorage department of finance collection of data on some tax parcels can not further a substantial government purpose, building additions under permits require no entry onto private residential property by data collectors to adjust a appraisal valuation and 14th Amendment board of equalization appraisal valuation hearing and refund judicial decision due process protect both Anchorage and taxpayer interest in taxation disputes.

181.　A determination by the Anchorage assembly under AS 29.45.150 Reevaluation creates taxpayer notice a substantial government interest exist, unlike life, health and safety general laws the assembly must make a specific determination of the class of property and/or area within the municipality to be reevaluated and 4th Amendment constitutionally compliant procedures to accomplish the reevaluation.

182.　Anchorage is arbitrarily reevaluating under AS 29.45.150 plaintiff's tax parcel through data collection policy while leaving similarity situated tax parcels unchanged, the classificatory scheme Anchorage utilizes of answering a knock or not answering a knock does not rationally advance a reasonable and identifiable governmental objective.

183.　Anchorage attempt to interview "whomever" answers a door knock to determine owner occupancy does not rationally advance a reasonable and identifiable governmental objective, Anchorage must determine every year prior to assembly tax levy ordnance the status of every taxpayer exemption.

36

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

184. Anchorage's entry on plaintiff's property was not for compliance with Anchorage Municipal Code 12.05.045 B, Anchorage office of internal audit, internal audit reports in 2019, 2012 and 2006 have concluded the assessor is not meeting the Anchorage Municipal Code 12.05.045 B requirement to confirm exemptions, annually timely contacting every single family residential exemption taxpayer through physical intrusion to perform onsite interview is a practical impossibility.

185. Anchorage violates plaintiff's 14th Amendment equal protection rights by discriminating against plaintiff's fundamental right to tax parcel reevaluation under AS AS 29.45.150 in the same manner and at the same time as similarly situated tax parcels in the same specific area or class are reevaluated.

## CLAIM IIII

### 4th Amendment Unreasonable Search Unpreventable
### 4th & 5th Amendment Substantive Right to Privacy
### 14th Amendment notice of government interest

186. Plaintiff repeats and realleges each allegation contained in paragraphs 1 thru 88 and paragraphs 148 thru 151 of this complaint.

187. Answering a random knock on a single family residential private dwelling visitor reception entrance is not consent for a search to collect date for appraisal valuation purposes.

188. Anchorage appraisal data collectors, like any visitors, are standing at the

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

threshold to a private dwelling when attempted entry is made.

189.   A portion of the interior of a private dwelling is always visible when a entrance door is opened to a Anchorage appraisal data collectors random knock.

190.   Anchorage appraisal data collection on single family residential private property serves no public health, life, safety or welfare purpose.

191.   4th Amendment rights can only be protected by exclusion from entry into the curtilage of a  single family residential private property by Anchorage appraisal data collectors.

192.   No law can or does require entry into the curtilage of a single family residential private property for the purpose of appraisal data collection or tax exemption conformation.

193.   State law trespass tort is not a remedy for 4th Amendment constitutional unreasonable search violation, prevention of opportunity for  Anchorage appraisal data collectors to search is only possible through exclusion from entry into the curtilage of single family residential private property without prior consent.

194.   Compliance with *Jardines* does not resolve the issue under equal protection, leaving properties where no response to a knock is answered permits a search to occur whenever a knock is answered.

195.   Plaintiff's has no way of determining a assessor is knocking at whatever random interval Anchorage chooses to show up and pound on plaintiff's entry door

without interrogating every knocker prior to opening the main entrance door, a 4th & 5th Amendment reasonable expectation of privacy cannot require a single family residential property owner to treat every visitor as the tax assessor until confirmed otherwise.

196. Anchorage violates plaintiff's 4th & 5th Amendment substantive right to privacy when a Anchorage data collector enters plaintiff's private residential property without prior consent as the act of answering a knock permits Anchorage department of finance to search a portion of the interior of ones house, an act which could never be authorized under a 4th Amendment warrant by a court of competent jurisdiction.

197. Anchorage violates plaintiff's 4th & 5th Amendment substantive right to privacy when no Anchorage assembly reevaluation resolution or act has been adopted giving plaintiff notice the legislature has made a determination a significant government interest exist and a procedure for accomplishing the ad valorem tax parcel reevaluation.

## CLAIM V

### 14th Amendment Due Process
### deprivation by an established procedure

198. Plaintiff repeats and realleges each allegation contained in paragraphs 1 thru 8 and 89 thru 151 of this complaint.

199. Anchorage through statute, policy, ordinance, regulation, or decision officially adopted and promulgated by Defendant and/or their officers collect a 10%

Case 3:21-cv-00139-JMK   Document 1   Filed 06/04/21   Page 39 of 46

penalty on untimely payment of real property tax obligations.

200. The collection of a 10% penalty is a 14th Amendment deprivation of property.

201. Deprivation of property is a protected property right under the 14th Amendment.

202. Anchorage collected a 10% penalty on a $499.99 unpaid balance from plaintiff on August 29, 2019.

203. Anchorage provided no notice of due process procedures to plaintiff, irregardless of the adequacy of those procedures.

204. Plaintiff's interest in fair procedure is substantial, failure to pay a 10% penalty results in a 4th Amendment seizure of one's home, calling the seizure a tax foreclosure sale does not change the substance of the action, a deed to a tax parcel is acquired by the Anchorage under judicial foreclosure proceeding for any unpaid tax obligation (principal, interest, penalty and cost).

205. A judgment and decree of foreclosure pursuant to Alaska Statute 29.45 is the remedy used by Anchorage on a delinquent real property ad valorem tax balance.

206. Alaska Statute Sec. 29.45.250 (a) penalty action is not a tax but a separate and distinct government taking of plaintiff's property interest.

207. Alaska Statute Sec. 29.45.250 (a) penalty is a 14th Amendment taking of property, notice and meaningful opportunity to be heard are required.

208. Notice to a taxpayer can only be given when a real property ad valorem tax obligation becomes delinquent on a specific tax parcel, opportunity only occurs after notice is given.

209. Anchorage provides no judicial hearing or opportunity to avoid penalty assessment but uses judicial foreclosure to collect penalties on real property, the in rem proceedings against the property are not timely notice to the property owner, a 10% penalty is not within the meaning of "a tax, assessment, servitude, or other burden" under *Davidson v. New Orleans*, 96 US 97, 104-105, (1878).

210. Anchorage municipal code §12.05.065 is not 14th Amendment due process, no judicial decision occurs, the chief fiscal officer decision to grant or not grant a waiver is not a judicial decision a 10% penalty applies to the tax parcel, Anchorage can produce no evidence in a court of competent jurisdiction judicial foreclosure tax proceeding a 10% penalty is valid without providing 14th Amendment due process.

211. Anchorage's enforcement rights under a tax lien go from 100% of a ad valorem tax obligation to 110% of a property interest (tax obligation plus penalty) in one 24 hour period without any 14th Amendment due process.

212. Anchorage can produce no evidence at a 14th Amendment due process hearing of a proper 10% penalty assessment, an essential element of any 14th Amendment due process hearing is government evidence adequate to establish justification for the taking, sending a delinquency notice with the 10% penalty added is strict liability

inappropriate to the circumstances.

213.   Anchorage demanded and plaintiff paid a $50.00 10% penalty on a $499.99 balance not remitted by the tax due date on tax parcel 009-196-19-000.

214.   Anchorage received the 10% penalty payment on August 29, 2019.

## CLAIM VI

### 14th Amendment Substantive Due Process

215.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 thru 8 and 89 thru 151 of this complaint.

216.   Anchorage receives interest on any unpaid tax liability, notice and a reasonable opportunity to pay the delinquent tax obligation and accrued interest prior to assessment of a penalty and a deprivation of a property interest hearing is required by substantive 14th Amendment due process.

217.   Anchorage action of collecting penalty under strict liability process, limited only to their own administrative error or no real owner, is a arbitrary government action when considered in the context that interest on principal is accruing and failure to pay a penalty is 4th Amendment seizure by Anchorage of the real property tax parcel.

218.   Anchorage's failure to provide any form of meaningful procedural due process means in substance the taking is complete when the penalty is paid, the option of allowing ones home to be deeded to Anchorage provides all the persuasion Anchorage

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

needs for taxpayers to pay the penalty without 14th Amendment notice and opportunity.

219.   Anchorage makes no fair trail before a fair tribunal final determination that a 10% penalty is proper for a individual tax parcel, Anchorage demands payment through computer account balance or written delinquency billing statement.

220.   14th Amendment substantive due process requires Anchorage provide a limited time opportunity after giving notice to plaintiff to pay the real property tax obligation plus accrued interest before making a determination a 10% penalty is due.

## CLAIM VII

### 14th Amendment Equal Protection

221.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 thru 8 and 89 thru 151 of this complaint.

222.   Anchorage permits the head cashier to modify real property tax penalty records prior to mailing written delinquency notices.

223.   The head cashier uses arbitrary discretion to modify real property tax penalty records after the payment due date and prior to mailing written delinquency notices.

224.   Anchorage is aware, or should be aware, the head cashier modifies real property tax penalty records without authority from the Anchorage department of finance official, delegated authority under Anchorage municipal code §12.05.065 is for a written

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

determination of waiver, not a head cashier change to computer records prior to Anchorage written notice of delinquency and addition of 10% penalty under strict liability.

225.   Anchorage, by allowing head cashier to arbitrary modify real property tax penalty records of some taxpayers treats identically situated taxpayers differently.

226.   10% Penalty collection is a 14th Amendment fundamental rights issue, strict scrutiny of equal protection requires all tax parcels be treated equally, all payments received by Anchorage prior to actual notice to a taxpayer of delinquency on a specific tax parcel must be limited to principal plus interest given it is within Anchorage's discretion as to when a delinquency notice will be sent.


PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Paul Anderson prays for judgment as follows:

A)     A declaration that Anchorage policy of data collection is a unreasonable search and violates the United States Constitution's 4th Amendment.

B)     A declaration that Anchorage policy of data collection treats plaintiff's failure to answer a door knock differently than property owners who answer a door knock in violation of the 14th Amendment equal protection clause;

C)     A declaration plaintiff has a 5th Amendment and 14th Amendment "right to exclude" Anchorage department of finance data collectors from plaintiff's private

*Robert Anderson, Pro Se v. Municipality of Anchorage*  Case

residential tax parcel;

D)    An award of compensatory damages against Anchorage in an amount to be determined at trial;

E)    An award of Plaintiff's costs and reasonable attorneys' fees in this action pursuant to 42 U.S.C. §§ 1983 and 1988;

F)    Appropriate injunctive relief, including permanent injunction against physical intrusion by Anchorage department of finance without prior consent or order from a court of competent jurisdiction, Anchorage department of finance policies regarding entry on to private property be conspicuously posted in the public area of the division of property assessment, Anchorage department of finance policies regarding entry on to private property be made available on the main page of Anchorage's property appraisal internet site and implementation of training protocols to prevent and effectively discipline the conduct complained of herein, injunction against Anchorage collecting real property tax penalties until 14th Amendment due process procedures are enacted providing notice and opportunity consistent with the private interest of plaintiff in taking a 10% property confiscation above and beyond the tax principal and interest due Anchorage under the assembly legislative act of tax levy;

G)    A declaration that Anchorage ordnance, policy and custom of 10% penalty assessment violates the United States Constitution's 14th Amendment due process and 14th Amendment equal protection clauses;

*Robert Anderson, Pro Se v. Municipality of Anchorage* Case

H)     That this Court retain jurisdiction of this matter for the purpose of enforcing its orders and that it adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy so that these declarations shall have the force and effect of final judgment;

I)     An order granting such other relief as this Court deems just and proper.

Dated this _4_ day of June, 2021.

Respectfully submitted,

*Robert Anderson*

Pro Se

Case 3:21-cv-00139-JMK   Document 1   Filed 06/04/21   Page 46 of 46