Pamela D. Weiss
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
Email: uslit@muni.org

Attorney for Defendant
Municipality of Anchorage

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| ROBERT ANDERSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MUNICIPALITY OF ANCHORAGE, ) | |
| ) | |
| Defendant. ) | Case No. 3:21-cv-00139 JMK |
| ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Anderson has asserted just about every constitutional theory he can to challenge two events: (1) a property appraisal analyst looking at the exterior of his residence; and (2) a $50 penalty that was incurred and he paid as a result of failing to pay his tax bill in full. For the reasons discussed below, plaintiff's complaint fails to allege sufficient facts to state a claim under any constitutional theory; indeed, in light of the facts alleged in the complaint, there appears to be no claim that he could bring against property appraisal or treasury for these events.

## Undisputed Facts

The Complaint (Dkt. 1) consists primarily of conclusory statements and representation of what plaintiff believes the law is. However, scattered among these statements are a handful of factual assertions.

The first set of facts relates to property appraisal's review of his property.[1] Specifically, Anderson alleges:

- He is the owner and resident of a parcel on Roger Driver located within the taxing jurisdiction of Anchorage and has been since 1989. (Complaint (Dkt. 1) at ¶¶ 9, 10)
- He filed appeals of his property taxes in 1997 and 1999. (*Id.* at ¶ 14)
- Department of Finance hand delivered some documents related to a BOE appeal in 1999, which plaintiff believed violated his right to privacy. (*Id.* at ¶¶ 15,16)
- In 1997, 1998 and 1999 Municipal personnel came to his property. (*Id.* at ¶ 18)
- In 2000, he sent a letter to the ombudsman and the mayor. (*Id.* at ¶¶ 19, 21)
- Again in 2000, the ombudsman responded to him in a letter, in which the ombudsman represented that Property Appraisal personnel would obtain written permission prior to physical intrusion onto his parcel. (*Id.* at ¶ 25)
- On July 11, 2019, an individual from the Municipality entered onto plaintiff's property. (*Id.* at ¶ 41)
- That individual also visited every single residence along Roger Drive, and "interviewed" eleven of the 24 residences. (*Id.* 43)
- When the individual did not make contact with him on July 11, 2019, property appraisal did not contact him further to "interview" him. (*Id.* at ¶ 45)
- The individual then entered into Anderson's front, side yard and backyard to gather information about the property. (*Id.* at ¶ 49)

---

[1] The first six of these allegations pertain to actions that took place nearly ten years ago. Although they are included for completeness, they are not material. The subject of the complaint is the entry onto his property of the Property Appraisal personnel in 2019.
 In any event, to the extent he seeks to make any claims regarding the actions taken by property appraisal staff, the ombudsman or the mayor in 1999 and 2000, any such claim would be barred by the two-year statute of limitations in AS 9.10.070.

- The individual placed a door hanger on his door that identified the individual as a senior appraiser. (*Id.* at ¶¶ 52, 55)
- Prior to that person coming to his property and placing the door hanger, there was no written request for entry. (*Id.* at ¶ 83)
- MOA did not obtain an administrative search warrant. (*Id.* at ¶ 85)

Anderson also complains about penalties that he was charged and voluntarily paid in full in accordance with Municipal Code. Specifically, he alleges:

- Anderson received a tax bill for 2019, for which the second installment was due August 15, 2019. (*Id.* at ¶¶ 89, 90)
- Anderson did not remit the proper amount; he underpaid by $500, because he failed to write the words "five hundred" on his check. He discovered the discrepancy himself from his bank statement. (*Id.* at ¶¶ 91, 99)
- On August 29, 2019, Anderson went to City Hall to reconcile the deficient amount. (*Id.* at ¶ 93)
- At that time, MOA had not notified him of the delinquency in writing. (*Id.* at ¶ 97)
- Anderson informed the cashier of his mistake in failing to write "five hundred" and the clerk told him that it was a common occurrence. (*Id.* at ¶ 99)
- The cashier asked if he would like to discuss the penalty with the head cashier and during his discussion with the head cashier, she explained how the penalty was calculated. (*Id.* at ¶¶ 99, 100, 101)
- Plaintiff paid the remaining balance of taxes plus the $50 penalty and was given a receipt and a screen printout (*Id.* at ¶¶ 103, 106, 107)
- He was charged a penalty but he did not incur any interest on his account from August 16-August 29 (*Id.* at ¶ 111)
- Previously, in 2015, MOA made an administrative error so that he did not receive the bill until after the 1st installment was due and a delinquency notice was sent prior to receiving the bill. After he demanded a copy of the original tax bill be provided, his penalty and interest were adjusted to $0. (*Id.* at ¶ 141) [2]

---

[2] Anderson states that "on information and belief" the cashier has adjusted penalties of similarly situated persons. Complaint (Dkt. 1) at ¶102. This allegation does not contain sufficient information to make it anything but conclusory. It fails to identify the source of this belief or provide any examples of such adjustments. To the extent that it refers to the prior adjustment he discusses in paragraph 141, and this fact is assumed to be true, that

Everything else in the complaint is a conclusory legal allegation or speculation. Even if the facts outlined above are assumed to be true-as they should be for purposes of this motion - his complaint fails to state a cognizable claim and the complaint should be dismissed.

## Legal Standard

All or part of a complaint may be dismissed for failure to state a claim upon which relief can be granted. FRCP 12(b)(6). A motion to dismiss for failure to state a claim can be based on the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory.[3]

In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.[4] Complaints that offer only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[5] "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"[6]

To avoid dismissal the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7] Plausibility is "more than

---

2015 situation is distinct from the present one based solely on the information provided in the allegation.
[3] *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).
[4] *Kwan v. Sanmedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (citation omitted).
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[6] *Id.* (citations omitted).
[7] *Id.* (citation omitted).

a sheer possibility"; facts that are "merely consistent" with liability fall short of "plausibility."[8]

If the court finds plaintiff has failed to state a claim, leave to amend should be granted unless amendment would be futile.[9] If any amendment plaintiff may offer would also be subject to dismissal, the court need not grant leave to amend.[10]

## Discussion

I. **THE TAX ASSESSOR'S VISIT TO THE HOME AND INSPECTION OF THE EXTERIOR IS NOT A SEARCH FOR PURPOSES OF THE FOURTH AMENDMENT.**

Plaintiff's first claim is that an employee from the Property Appraisal Division[11] violated his Fourth Amendment rights when, as described in his complaint, that individual came to his doorstep, knocked on the door and placed a door hanger after he did not answer, and entered the side yard and back yard to view the property for tax appraisal purposes without a warrant. Complaint (Dkt. 1) at ¶¶ 155-156.

The Fourth Amendment protects homes and land immediately surrounding it (the curtilage) from "unreasonable intrusions."[12] But the protections of the Fourth Amendment

---

[8] *Id.*
[9] *Lacey v. Maricopa County*, 693 F.3d 896, 926 (9th Cir. 2012) (citations omitted).
[10] *See Pappy's Barber Shops, Inc. v. Farmers Group., Inc.*, 491 F.Supp.3d 738, 739 (S.D. Cal. 2020).
[11] He refers to them as a "department of finance data collector." (Para. 155) The Anchorage Municipal code establishes a "division of property assessment within the department of finance headed by the assessor, under the direction of the chief fiscal officer." AMC 12.05.045.
[12] *Covey v. Assessor of Ohio County*, 777 F.3d 186, 192 (4th Cir. 2015) (citing *Oliver v. U.S.*, 466 U.S. 170, 180 (1984)).

hinge on the occurrence of a "search."[13] To determine whether a search implicates the Fourth Amendment depends on whether the individual has an expectation of privacy in the place searched and whether that expectation was objectively reasonable.[14] "Official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment."[15]

Various courts have found that an assessor's entry onto property to make observations from the exterior, including taking exterior measurements, does not implicate the Fourth Amendment.[16] In 1988, the Washington Court of Appeals analyzed a claim under the Fourth Amendment of the U.S. Constitution and found there was no search when the tax assessor/appraiser entered property - but not the interior of the residence - for tax purposes *even though* he had to pass through two gates and pass numerous "no trespassing" signs in order to knock on the door of the residence and measure dimensions from the exterior.[17] The court first noted that the assessor was on legitimate business and was

---

[13] *Widgren v. Maple Grove Tp.*, 429 F.3d 575, 578 (6th Cir. 2005) (citing *Kyllo v. U.S.*, 533 U.S. 27, 32 (2001)).
[14] *U.S. v. Alabi,* 943 F.Supp.2d 1201, 1244 (D.N.M. 2013) (citing *U.S. v. Miller*, 425 U.S. 435, 440 (1976)).
[15] *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (internal quotations and citation omitted).
[16] The same is true for other types of "administrative searches". *E.g., Ehlers v. Bogue*, 626 F.2d 1314, 1315 (5th Cir. 1980) (finding no Fourth Amendment violation where health inspectors surveyed outside of plaintiff's apartment building on plaintiff's property).
[17] *State v. Vonhof,* 751 P.2d 1221, 1225 (Ct. App. Wash. 1988). The issue arose because the assessor, while examining the exterior a shop building detected the strong odor of marijuana and he relayed this observation to the sheriff, which ultimately led to his criminal prosecution. *Id.* at 1222.

authorized under statute to visit, investigate and examine the property.[18] The court found the assessor's entry, which led to the accidental discovery of the marijuana on the property, did not implicate the Fourth Amendment because of certain factors, including that the assessor never entered any structures, that he took a "normal route" considering his purpose in inspecting the property, he acted openly and honestly by knocking beforehand, he got no closer to the structure than necessary to conduct the inspection and opened no doors, the inspection occurred during the day, and he only went where he needed to go.[19]

A more recent decisions by a federal court came to the same conclusion, finding that a tax assessor's inspection of the exterior of a home within the curtilage is not a Fourth Amendment search. In that case, *Widgren v. Maple Grove Tp.*,[20] the tax assessor entered the property a total of three times to confirm a zoning violation, to post a civil infraction on the front door and to conduct a tax assessment through observation of the exterior of the home.[21] After the taxpayer learned of these violations, he sued in U.S. District Court. The court explained that "the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment."[22] The court then specifically addressed the plaintiff's complaint that the assessor had entered into

---

[18] *Id.* at 1225. Alaska Statutes similarly provide that "the assessor or the assessor's agent may enter real property during reasonable hours to examine visible personal property and the exterior of a dwelling or other structure on the real property." AS 29.45.130(b).
[19] *Vonhof*, 751 P.2d at 1225.
[20] 429 F.3d 575 (6th Cir. 2005).
[21] *Id.* at 578.
[22] *Id.* at 579-580 (citations omitted).

the curtilage of the home and concluded that naked-eye observations of a house's exterior - even if they took place within the curtilage of the home - were not unduly intrusive and therefore did not implicate the Fourth Amendment.[23]

Here, plaintiff alleges that the assessor staff entered onto his property, including the residence's curtilage, for purposes of a tax inspection. Assuming this is true, the case law establishes that he had no objective expectation of privacy and thus no search occurred.[24] Accordingly, the entry onto the property to inspect or observe the residence from the exterior do not implicate the Fourth Amendment.[25]

## II. PLANTIFF HAS ALLEGED NO FACTS THAT SUPPORT TAKINGS OR DUE PROCESS CLAIMS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS.

Anderson calls his second claim a violation of his "right to exclude." A "right to exclude" is not found in either the Fifth or Fourteenth Amendment. Upon further parsing of the language of the complaint, it appears that he is alleging takings and due process violations.

---

[23] *Id.* at 581-86.
[24] *See also Field v. City of Hartford*, 2019 WL 4279011 at *8 (D. Conn. Sept. 9, 2019) (finding complaint failed to state a claim for Fourth Amendment violation because there was no intrusion on legitimate expectation of privacy by city employee who entered onto property to post a violation notice on the door).
[25] Had plaintiff brought this complaint against the individual employee who actually entered his property, that individual would be entitled to qualified immunity since, in light of the case law, the employee could not have been violating clearly established statutory or constitutional rights." *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018).

A. **The Assessor's Brief Visit to the Residence to View the Exterior Cannot Constitute a Taking.**

Anderson asserts that the assessment staff's entry onto his property constituted a taking because "[it] treat[ed] plaintiff's private property as public property which can be entered…." Complaint (Dkt. 1) at ¶ 171. This a conclusory statement that does not offer any facts. Moreover, it misstates the law.

A taking occurs when the "government physically takes possession of an interest in property for some public purpose."[26] As alleged in the complaint, all that happened was that the analyst entered onto his property to knock on the door, place a door hanger with information, and inspect the exterior of his residence. Complaint (Dkt. 1) at ¶¶ 41, 48, 49, & 52. Nothing in the complaint suggests that the analyst has done anything to remain on the property or take possession of it. Given this, there has been no physical taking of his property.

The law also provides compensation for regulatory takings, which occur when a regulation compels a property owner to suffer a physical "invasion" by way of placement of equipment, use of airspace, or servitudes.[27] A regulatory taking may also occur when a regulation denies all "economically beneficial or productive use of land."[28] But none of

---

[26] *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 323 (2002).
[27] *Lucas v. South Carolina Coastal Comm'n*, 505 U.S. 1003, 1015 (1992) (citing examples).
[28] *Id.*

the facts asserted by plaintiff in his complaint establish a physical or regulatory intrusion sufficient to give rise to a regulatory takings claim.

> **B.    Plaintiff Cannot Establish Any Deprivation of a Protected Liberty or Property Interest.**

Plaintiff also alleges both substantive and procedural due process claims. Complaint (Dkt. 1) at ¶ 172. The protections of due process apply only where there is a "deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection."[29]

There are simply no facts alleged in the complaint that would allow a factfinder to conclude that the assessor's inspection interfered with or implicated a life, liberty or property interest. Indeed, as discussed above (see part I, *supra*), there is no reasonable expectation of privacy from the inspection of the exterior of the residence by the assessor. Thus, his allegations cannot establish the deprivation of a protected interest.

But even if the brief entry onto property were a protected interest, there is no evidence that he was deprived of any procedural protections. On the contrary, he acknowledges a statute authorizes the assessor to inspect property (AS 29.45.130(b)). *See* Complaint (Dkt.1) at ¶¶ 39-40. He also was notified of the visit when the appraiser knocked on the door and placed a door hanger. *Id.* at ¶¶ 44, 52, 55. On these facts, a reasonable factfinder could not find that he was deprived of his rights to procedural due process.

---

[29] *Vasquez Romero v. Garland*, 999 F.3d 656, 666 (9th Cir. 2021) (citation omitted).

Similarly, there are no allegations or facts in the complaint that could give rise to a substantive due process claim. Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'"[30] The interests protected by substantive due process are fewer than those protected by procedural due process; it protects only those fundamental rights rooted in the Constitution.[31] Since his allegations are insufficient to state a claim for procedural due process, they are necessarily inadequate to state a claim for substantive due process.

Nevertheless, Anderson asserts that the "zone of privacy" is a fundamental right. He is correct that the courts have recognized certain privacy rights even though there is no constitutional right to privacy mentioned in the U.S. Constitution.[32] But he has identified no authority for the privacy right he asserts in this circumstance. Indeed, the courts have explicitly rejected there is a privacy right with regard to the entry onto property to conduct exterior inspections for ta purposes. *See* Discussion part I, above. Accordingly, he has not stated a cognizable claim.

---

[30] *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (citations omitted).
[31] *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (J. Powell concurring) (explaining not all property interests are protected by substantive due process).
[32] *See e.g., Griswold v. Connecticut*, 381 U.S. 479 (1965) (discussing certain zones of privacy and concluding that marital privacy is one such right).

### III. ANDERSON FAILS TO STATE AN EQUAL PROTECTION CLAIM BECAUSE THERE ARE NO ALLEGATIONS OF DIFFERENTIAL TREATMENT.

Anderson's last constitutional theory relating to the inspection of his property references the equal protection clause. Specifically, he asserts a class of one claim under equal protection because, he says, MOA's practices discriminate against him and similarly situated family home occupants. Complaint (Dkt. 1) at ¶178.

The claim as pled in the complaint lacks critical information that is necessary to proceed. There are no allegations as to nature of the discrimination he believes he endured. Indeed, a successful equal protection claim brought by a class of one would have to show that he was intentionally treated differently from others similarly situated without a rational basis.[33] But the allegations contained in the complaint appear to establish that he *was* treated the same as all other residences in his neighborhood. Specifically, he alleges that the "data collector" visited every single family residential property on his street. Complaint (Dkt. 1) at ¶ 43. He also asserts that about half the owners were "interviewed" while the other half (which included him) were not. *Id.* at ¶¶ 43, 45. As his own allegations suggest, the distinction between those who spoke to property appraisal and those who did not appears to relate to whether they answered the door. *Id.* at ¶ 44. Such a distinction that would be protected under the equal protection clause.

---

[33] *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (citations omitted).

## IV. PLAINTIFF'S DUE PROCESS CLAIM RELATING TO THE LATE PAYMENT PENALTY IS NOT COGNIZABLE.

The final claim asserted in the Complaint relates to a 10% penalty he incurred when he failed to pay his taxes in full. (CLAIM V & VI) As he points out in the complaint, AMC 12.05.065C.1. provides that "if an installment is not paid in full before the due date, the unpaid balance of that installment becomes delinquent and penalty, interest and costs accrue." AMC 12.05.065C.1. Anderson through his allegations admits that he did not make his payment in full. Complaint (Dkt. 1) at ¶ 91 (stating he failed to remit the proper amount). He discovered the error himself shortly after the deadline had passed. *Id.* at ¶¶ 92-93 (explaining he went to Anchorage City Hall after he received his bank statement to reconcile the deficient amount). He was given all the information he requested (*id.* at ¶¶ 105-107) and then he paid the balance in full. *Id.* at ¶ 109.

The basis for the claim is a bit unclear but as best can be discerned he believes the failure of the Municipality to send a notice of delinquency is a violation of due process. However, such a claim fails as a matter of law.

His complaint recognizes that it is the practice of the MOA to send notices of delinquency. *Id.* at ¶ 96. Yet the allegations also demonstrate that he was aware he had a delinquent balance upon which he would be charged penalties when he went to the Municipality to resolve the issue. And he did that *before* the Municipality took any steps to collect the penalty such as sending a notice. *Id.* at ¶ 92-93. No notice was required to alert him to the deficiency and once he paid the balance, no notice would have been

required because no balance remained. *See id.* at ¶ 97 (claiming the MOA did not notify plaintiff of a delinquency).

His claim that the penalties amount to a confiscation are likewise not actionable. *Id.* at ¶ 112. Voluntary payment of the penalty means that there has not been a deprivation of property.[34] And in order to allege an infringement of a right, plaintiff must show he has suffered "a concrete and particularized injury" that is "actual or imminent".[35] But he alleges no actual injury. He does reference various consequences that he says would happen *if* the 10% penalty went unpaid (Complaint (Dkt. 1) at ¶¶ 118-119 (discussing judicial proceedings through tax foreclosure)), but these are not actual and imminent and therefore do not constitute infringements of a property interest.[36] Since the allegations contained in the complaint do not establish any property interest infringed upon, he cannot state a claim for violation of due process.

## Conclusion

For the foregoing reasons, the complaint against the MOA should be dismissed. In light of the allegations and the case law discussed above, MOA believes that there are no amendment plaintiff can make that would allow his complaint to avoid dismissal. Accordingly, unless plaintiff can identify in his opposition what possible amendments

---

[34] *Schroeder v. Diamond Parking., Inc.*, 2013 WL 5348472 at *9 (D. Hawaii Sept. 17, 2013)
[35] *Schroeder*, 2013 WL 5348472 at *9 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).
[36] *Schroeder*, 2013 WL 5348472 at *9

might be made and those amendment would not be dismissed for failure to state a claim, the complaint should be dismissed without leave to amend

Respectfully submitted this 30th day of August, 2021.

PATRICK N. BERGT
Municipal Attorney

By: s/Pamela D. Weiss
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
E-mail: uslit@muni.org
Alaska Bar No. 0305022

Certificate of Service
The undersigned hereby certifies that on 08/30/21, a true and correct copy of the foregoing was served on:

Robert Anderson
4908 Roger Drive
Anchorage, AK 99507

by first class regular mail, if noted above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

/s/ Cathi Russell
Cathi Russell, Legal Secretary
Municipal Attorney's Office