IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROBERT ANDERSON,<br><br>     Plaintiff,<br><br>vs.<br><br>MUNICIPALITY OF ANCHORAGE,<br><br>     Defendant. | Case No. 3:21-cv-00139-JMK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

Before the Court at Docket 11 is a Motion to Dismiss filed by Defendant Municipality of Anchorage ("the Municipality"). Plaintiff Robert Anderson, representing himself, filed his Opposition at Docket 14, and Defendant replied at Docket 15. For the reasons stated below, the Motion is GRANTED in part and DENIED in part as follows:

With respect to Claim I, the Motion is DENIED.

With respect to Claims II–VI, the Motion is GRANTED, and these claims are DISMISSED WITH PREJUDICE.

With respect to Claim VII, the Motion is GRANTED, and this claim is DISMISSED WITHOUT PREJUDICE. Mr. Anderson is granted leave to amend his Complaint, only with respect to Claim VII, before March 15, 2022.

## I. BACKGROUND

Mr. Anderson's Complaint challenges the constitutionality of two events: (1) a Municipal property appraiser entering his property to examine the exterior of his residence, and (2) the Municipality levying a $50 tax penalty on him without sending a notice. For the purposes of this Motion, the Court assumes Mr. Anderson's version of events are true.[1]

### A. Property Appraiser's Entry onto Mr. Anderson's Yard

Mr. Anderson has lived at 4908 Roger Drive, Anchorage, Alaska since 1989. Between 1997 and 2000, Municipal Department of Finance ("the Department") personnel entered Mr. Anderson's property on multiple occasions, either to deliver documents or measure the exterior of the house for his property tax appraisal.[2] On January 4, 2000, Mr. Anderson wrote both the ombudsman and the mayor to express concern about the intrusions and request that any personnel obtain written permission before entering his land.[3] The ombudsman responded to Mr. Anderson's letter and assured him that the Department would comply with his request.[4] The ombudsman explained to Mr. Anderson that Alaska Stat. § 29.45.130(b) grants the assessor authority to enter his land.[5] This statute states:

> For investigation, the assessor or the assessor's agent may enter real property during reasonable hours to examine visible

---

[1] *See Kawn v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).
[2] Mr. Anderson outlines these events as background, but his claims exclusively focus on the tax assessor's entry into his property on July 11, 2019. *See* Docket 1 at 31–37. The Court does not interpret Mr. Anderson's claims as including the events between 1997 and 2000.
[3] *See* Dockets 1-2, 1-3.
[4] Docket 1-4.
[5] *Id.*

*Anderson v. Municipality of Anchorage*     Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss     Page 2
Case 3:21-cv-00139-JMK   Document 16   Filed 02/16/22   Page 2 of 17

> personal property and the exterior of a dwelling or other structure on the real property. . . . A person shall, on request, furnish to the assessor or the assessor's agent assistance for the investigation and permit the assessor or the assessor's agent to enter a dwelling or other structure to examine the structure or personal property in it during reasonable hours. The assessor may seek a court order to compel entry and production of records needed for assessment purposes.[6]

The ombudsman went on to explain that "the policy of the assessor office is to attempt contact with the resident and explain what they are doing. If there is no answer, the assessor is allowed to do an exterior inspection in accordance with the state statute."[7]

On July 11, 2019, an appraiser entered onto Mr. Anderson's property without written consent or administrative search warrant. The appraiser visited every residence on Roger Drive, knocked on the front door of each house, and "interviewed" eleven of the twenty-four residences.[8] When the appraiser did not make contact with Mr. Anderson, he entered into Mr. Anderson's front yard, side yard, and backyard "for the purpose of gathering information."[9] The appraiser then placed a "Property Appraisal Data Review Inquiry" door hanger on Mr. Anderson's front door, and a business card identifying the individual as a senior appraiser for the Department of Finance.[10] Mr. Anderson claims that the actions of the appraiser in July 2019 represent the Department's policy or custom to

---

[6] Alaska Stat. § 29.45.130(b). The law also provides that the assessor may not enter the interior of an occupied dwelling or structure without permission or a court order.
[7] Docket 1-4 at 2.
[8] Docket 1 at 10.
[9] Id.
[10] Id. at 11–12; see also Docket 1-5.

*Anderson v. Municipality of Anchorage*     Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss     Page 3
Case 3:21-cv-00139-JMK    Document 16    Filed 02/16/22    Page 3 of 17

enter private residential property without consent to gather information for governmental purposes, and that the Department is acting under state authority to do so.[11]

**B.      Municipal Tax Penalty**

Mr. Anderson received a municipal property tax bill in 2019, the second installment of which was due August 15, 2019. Mr. Anderson miswrote the check, accidentally underpaying his bill by $500.[12] He discovered this error when his bank statement showed a lesser amount than he intended to pay. On August 29, 2019, he went to City Hall to explain the error and pay the outstanding amount.[13] He paid the $500 and was charged a 10 percent ($50) penalty under Municipal Code § 12.15.060(C)(1)(a). He did not incur any interest due to the late payment. The cashier acknowledged Mr. Anderson's explanation for his late payment, saying that it was a "common occurrence."[14] The cashier asked if Mr. Anderson would like to discuss the penalty with the head cashier, who had access to remove the penalty.[15] The head cashier explained to Mr. Anderson how the penalty was calculated but did not remove it. Mr. Anderson then paid the balance in full.[16]

Prior to paying the balance, Mr. Anderson had not received notice from the Municipality about the account delinquency. Mr. Anderson claims that the Municipality's policy is to provide mailed notice that includes the outstanding amount.[17]

---

[11] Docket 1 at 8–9, 12, 31–32; *see also* Docket 1-4.
[12] Docket 1 at 19.
[13] *Id.*
[14] *Id.* at 20.
[15] *Id.*
[16] *Id.*; *see also* Dockets 1-6, 1-7.
[17] Docket 1 at 19.

*Anderson v. Municipality of Anchorage*                                                                        Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss                                                   Page 4
Case 3:21-cv-00139-JMK    Document 16    Filed 02/16/22    Page 4 of 17

Mr. Anderson claims that "on investigation and belief," the head cashier had adjusted penalties of similarly situated taxpayers between the payment's due date and when the notice is mailed.[18] In 2015, the Municipality made an administrative error and sent Mr. Anderson's bill to the incorrect address, which caused his payment to be late. The Municipality had sent a delinquency notice prior to Mr. Anderson actually receiving the bill. His penalty and interest were adjusted to $0 after Mr. Anderson raised the issue with the Municipality.[19]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint because it fails to state a claim upon which relief can be granted. This means that the facts alleged by the complaint do not amount to a claim under any cognizable legal theory.[20] To survive a motion to dismiss, the complaint must contain enough facts that, if taken as true, would state a legal claim to relief that is "plausible on its face."[21] As such, the Court assumes that the facts alleged in the complaint are true and construe them in the light most favorable to the nonmoving party.[22] However, conclusory statements, unwarranted inferences, and naked assertions of law will not suffice; "they must be supported by factual allegations" to survive a motion to dismiss.[23]

---

[18] *Id.* at 20.
[19] *Id.* at 29.
[20] *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015).
[21] *Id.*
[22] *Kwan*, 854 F.3d at 1096.
[23] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Anderson v. Municipality of Anchorage                                        Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss                 Page 5
Case 3:21-cv-00139-JMK   Document 16   Filed 02/16/22   Page 5 of 17

Though conclusory statements are insufficient, "a plaintiff need not plead all facts necessary to carry his or her burden. Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. So long as plaintiffs meet this standard of plausibility, their claim survives a 12(b)(6) motion even if defendants present a similarly plausible description of the disputed events. A dismissal for failure to state a claim is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[24]

### III. DISCUSSION

**A. Mr. Anderson has Pleaded Sufficient Facts to State a Plausible Claim Under the Fourth Amendment with Respect to the Tax Assessor's Entry Onto His Curtilage**

Mr. Anderson's first claim alleges that the property appraiser's visit constituted an unreasonable search in violation of the Fourth Amendment. Mr. Anderson claims it is the Municipality's policy or custom that appraisers may enter a person's property without a warrant or consent to conduct an investigation for tax assessment purposes.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." For a constitutional violation to have occurred, there must first be a "search" as understood by

---

[24] *Laborers' Int'l Union of N. Am., Loc. 341 v. Main Bldg. Maint., Inc.*, 435 F. Supp. 3d 995, 1000 (D. Alaska 2020) (internal quotations and citations omitted).

*Anderson v. Municipality of Anchorage*  Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss  Page 6
Case 3:21-cv-00139-JMK   Document 16   Filed 02/16/22   Page 6 of 17

the Fourth Amendment. If a "search" has occurred, the Court analyzes whether it was unreasonable, *i.e.*, without a warrant or without an exception to the warrant requirement.[25]

The Municipality argues that the tax assessor's inspection is not a "search" under the Fourth Amendment because it did not violate Mr. Anderson's reasonable expectation of privacy.[26] In support, the Municipality cites a Sixth Circuit decision and a Washington state court decision that analyze the intrusiveness of a tax assessor's entry onto the curtilage and exterior observation of the home.[27] These cases found that the assessment did not compromise any legitimate interest in privacy, therefore were not searches under the Fourth Amendment. In response, Mr. Anderson argues that the "reasonable expectation of privacy" test, first articulated in *Katz v. United States*,[28] does not apply when there is a physical intrusion into the curtilage.[29]

The Ninth Circuit appears to agree with Mr. Anderson. In *United States v. Perea-Rey*, the Court held that the district court erred in applying the *Katz* "reasonable expectation of privacy" test when a government official entered the home's curtilage.[30] Citing the Supreme Court's holding in *United States v. Jones*, the Ninth Circuit explained that the *Katz* test "has been *added to*, not *substituted for*, the common-law trespassory test," and should be used "only in determining the scope of the curtilage, not the propriety of the

---

[25] *See, i.e., Camara v. Mun. Ct. of City and Cnty. of San Francisco*, 387 U.S. 523, 528–29 (1967).
[26] Docket 12 at 5.
[27] *See Widgren v. Maple Grove Twp.*, 429 F.3d 575, 585–86 (6th Cir. 2005); *State v. Vonhof*, 751 P.2d 1221, 1225 (Ct. App. Wash. 1988). The Municipality also cites *Ehlers v. Bogue, 626 F.2d 1314*, 1315 (5th Cir. 1980) for the proposition that an administrative survey of the exterior of the home does not constitute a search, even when the inspector was on plaintiff's property. However, in this case, there was no entry onto the curtilage; plaintiff's apartment was surveyed from an area akin to "open fields."
[28] 389 U.S. 347 (1967).
[29] *See* Docket 1 at 14 (citing *United States v. Jones*, 565 U.S. 400, 409 (2012); Docket 14 at 9.
[30] 680 F.3d 1179, 1185–86 (9th Cir. 2012).

*Anderson v. Municipality of Anchorage*                                Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss             Page 7
Case 3:21-cv-00139-JMK    Document 16    Filed 02/16/22    Page 7 of 17

intrusion."[31] Thus, a physical intrusion into a constitutionally protected area (here, the curtilage of the home) was sufficient to establish a search under the Fourth Amendment; "no further showing was required."[32] One year later in *Sims v. Stanton*, the Ninth Circuit reiterated its holding that, "because the curtilage is part of the home, searches and seizures in the curtilage without a warrant are also presumptively unreasonable" and concluded that the district court erred in applying a "totality of the circumstances" balancing test to justify an officer's warrantless entry into the curtilage.[33]

Mr. Anderson claims that, per municipal custom, the tax assessor explored the curtilage of his home to conduct an investigation without a warrant or consent. These facts constitute a plausible claim that the Municipality violated his Fourth Amendment rights. This is true even though the search was performed to further a regulatory scheme; an administrative search implicates the Fourth Amendment even if refusal to consent carries no criminal penalty and the search is not related to a criminal investigation.[34] Mr. Anderson is not required to address any exceptions to the warrant requirement, including any relationship between the Municipality's policy and Alaska Stat. § 29.45.130(b), as these are affirmative defenses that the Municipality has not yet raised.[35]

---

[31] *Id.* at 1186 (quoting *Jones*, 565 U.S. at 409).
[32] *Id.*
[33] *Sims v. Stanton*, 706 F.3d 954, 959–60 (9th Cir. 2013).
[34] *See Sanchez v. Cnty. of San Diego*, 464 F.3d 916, 922 n.8 (9th Cir. 2006) (collecting cases); *see also Camara*, 387 U.S. 523 at 534; *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977) (warrantless entry by IRS agents violates corporation's right to privacy).
[35] *See Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 195 (4th Cir. 2015) (plaintiff's claim survived motion to dismiss where plaintiff pleaded that tax assessor entered their property to collect data). Mr. Anderson appears to preemptively argue that whether the assessors are authorized under state law is immaterial to whether the conduct violates the constitution, citing *McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist.*, 373 U.S. 668, 674 (1963).

*Anderson v. Municipality of Anchorage*  Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss  Page 8

Case 3:21-cv-00139-JMK   Document 16   Filed 02/16/22   Page 8 of 17

Mr. Anderson pleaded a plausible claim that the tax assessor's inspection of his property violated the Fourth Amendment. With respect to Claim I, the Motion to Dismiss is DENIED.

**B.    The Property Appraiser's Entry onto Mr. Anderson's Yard does not Constitute a "Takings" under the Fifth and Fourteenth Amendments**

Mr. Anderson's second claim alleges that the property appraiser's visit violated his property rights (namely the "right to exclude"), which he claims amounts to an unconstitutional taking under the Fifth and Fourteenth Amendments.[36] Mr. Anderson argues that by entering his property, "Anchorage treats private residential property as public property to be entered and searched at the will of the Anchorage Department of Finance."[37]

The tax assessor's brief entry onto Mr. Anderson's curtilage does not amount to a taking of his property. A taking occurs when the government seizes private property.[38] The seizure could be done physically or via regulations that deny the owner any beneficial or productive use of his land.[39]

Here, Mr. Anderson has not pleaded any facts that would amount to a seizure of his property. By his own account, the tax assessor's presence on the property was brief; the assessor did not remain on the property or otherwise take possession of it.

---

[36] *See* Docket 1 at 34; Docket 14 at 15. The Municipality reads Mr. Anderson's claim as also including a procedural due process claim, but the Court does not interpret it as such. To the extent that Claim II includes a due process claim, it follows from the Court's reasoning that the brief visit by the assessor did not deprive Mr. Anderson of a property interest, and therefore cannot violate his due process rights.

[37] Docket 1 at 7.

[38] *See Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071–72 (2021).

[39] *Id.*

*Anderson v. Municipality of Anchorage*                                                                                       Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss                                                                Page 9
Case 3:21-cv-00139-JMK   Document 16   Filed 02/16/22   Page 9 of 17

Mr. Anderson has not alleged that the Municipality has restricted his property via regulations such that he is denied any beneficial use of the land.

With respect to Claim II, the Motion to Dismiss is GRANTED and Claim II is DISMISSED WITH PREJUDICE.

**C.     The Municipality's Tax Assessment Policy does not violate the Fourteenth Amendment's Equal Protection Clause**

Mr. Anderson's third claim alleges that the Municipality's policy discriminates between "home occupants who answer a knock at the door and home occupants who do not answer a knock at the door."[40] Those who answer are given an opportunity to refuse or consent to a search, while those who do not answer are forced to give "implied consent."[41] Mr. Anderson brings his claim under the Fourteenth Amendment's Equal Protection Clause both as a "class of one" and on behalf of "home occupants not given an opportunity to demand [tax assessors] leave the property."[42]

"To state an equal protection claim under § 1983, a plaintiff must allege that the defendants acted with an intent or purpose to discriminate against him based upon membership in a protected class. Alternatively, a plaintiff may state an equal protection claim in some circumstances by alleging that he has been irrationally singled out as a so-called 'class of one.'"[43]

---

[40] Docket 1 at 35; *see also* Docket 14 at 16.
[41] Docket 1 at 35.
[42] *Id.*
[43] *Gagic v. Cnty. of Maricopa*, No. 21-15857, 2021 WL 6102183, at *1 (9th Cir. Dec. 22, 2021) (internal citations and quotations omitted).

*Anderson v. Municipality of Anchorage*　　　　　　　　　　　　　　　　Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss　　　　　　　　　　　　Page 10

Case 3:21-cv-00139-JMK   Document 16   Filed 02/16/22   Page 10 of 17

Whether or not a homeowner answers the door is not a protected class for the purposes of the Fourteenth Amendment, and Mr. Anderson does not allege that the Municipality classified him or others on any other basis.[44] Although equal protection can apply to a "class of one," by his own account, Mr. Anderson was not treated differently. The tax appraiser visited every property on Roger Drive. The appraiser interviewed any homeowner who answered the door, and physically examined the homes of any homeowner who did not. Mr. Anderson was not discriminated against or "irrationally singled out" because he was treated the same as other homeowners and, as he claims, in accordance with Municipal policy.[45]

Mr. Anderson also appears to allege that the Municipality's policy discriminates "against plaintiff's fundamental right to tax parcel reevaluation."[46] However, Mr. Anderson does not allege that his property taxes were materially impacted by the assessor's visit to his home or that the Municipality levied a discriminatory tax on his land. Rather, he alleges that he has a fundamental right to have his parcel reevaluated "in the same manner and at the same time" as other homeowners.[47] Mr. Anderson does not cite any caselaw in support of this proposition. There simply is no fundamental right in the Constitution to have a tax parcel reevaluated at the same time as other homeowners, nor does the equal protection clause "require identity of treatment" for all people.[48]

---

[44] C.f. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441–42 (1985).
[45] See *id.*; *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008).
[46] Docket 1 at 37.
[47] *Id.*
[48] See *Garrison v. United States*, 930 F.2d 920 at *1 (9th Cir. 1991) (quoting *Walters v. City of St. Louis*, 347 U.S. 231, 237 (1954)) (upholding classification giving different tax treatment to business and personal incomes).

*Anderson v. Municipality of Anchorage*　　　　　　　　　　　　　　　　Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss　　　　　　Page 11
Case 3:21-cv-00139-JMK　Document 16　Filed 02/16/22　Page 11 of 17

With respect to Claim III, the Motion to Dismiss is GRANTED. Claim III is DISMISSED WITH PREJUDICE.

## D. The Municipality's Policy of Knocking on Homeowners' Front Doors does not Violate the Fourth, Fifth, or Fourteenth Amendments

Mr. Anderson's fourth claim alleges that his rights and his neighbors' rights were violated when the tax assessor knocked on the front door or spoke with any homeowner that answered their door.[49] Mr. Anderson appears to argue that because the tax appraiser could see inside the home when a person answers the door, it is an unconstitutional search under the Fourth Amendment and violates his "substantive right to privacy" under the Fifth and Fourteenth Amendments.[50] He also argues that because the assessor's approach is unannounced and without prior consent, it violates an expectation of privacy.[51] These facts cannot constitute a plausible claim under the Fourth, Fifth, or Fourteenth Amendment.

While physical intrusion onto a home's curtilage is protected by the Fourth Amendment, this protection does not bar a government official from knocking on a front door, leaving documents, or otherwise speaking with homeowners. The Supreme Court has recognized an implied license for a member of the public to "approach the home by the

---

[49] Docket 1 at 33; Docket 14 at 7.
[50] Mr. Anderson's fourth claim also appears to reiterate much of his first claim that a tax assessor may not enter the curtilage of the home. Treating the first and fourth claim as separate, the Court interprets any reference to the curtilage in Mr. Anderson's fourth claim as relating to the tax assessor's approach to the front door.
[51] Mr. Anderson's Opposition appears to include a procedural due process claim, which is not included in his Complaint. The Court will not consider a new claim in an Opposition to a Motion to Dismiss. However, it follows from the Court's reasoning that the brief visit by the assessor did not deprive Mr. Anderson of a property interest, and therefore cannot violate his due process rights.

*Anderson v. Municipality of Anchorage*     Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss     Page 12

Case 3:21-cv-00139-JMK    Document 16    Filed 02/16/22    Page 12 of 17

front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."[52] As such, a government official may approach a home and knock "precisely because that is 'no more than any private citizen might do.'"[53] A person may consent to answer the door or, like Mr. Anderson, may not answer the door; there is no obligation to do so.[54]

Here, Mr. Anderson has not pleaded any facts that the tax assessor improperly approached his front door, improperly knocked, or otherwise violated the implied license to request to speak with homeowners. Mr. Anderson did not answer the door when the assessor knocked, and he does not allege that the assessor improperly viewed or entered the inside of his home. Mr. Anderson's Complaint does not plead any facts that suggest the tax assessor's conduct went beyond the reasonable, respectful conduct of a private citizen knocking on the front door. This is not a violation of his constitutional rights. Further, to the extent that Mr. Anderson's claim alleges a violation of his neighbors' rights, he does not have standing to sue on their behalf.[55]

With respect to Claim IV, the Motion to Dismiss is GRANTED. Claim IV is DISMISSED WITH PREJUDICE.

---

[52] *Florida v. Jardines*, 569 U.S. 1, 8 (2013).
[53] *Id.* (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)).
[54] *Kentucky v King*, 563 U.S. at 470.
[55] *See Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015) (an injury sufficient to create standing must be "concrete and particularized" and "actual or imminent" to rather than conjectural or hypothetical).

*Anderson v. Municipality of Anchorage*  Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss  Page 13
Case 3:21-cv-00139-JMK   Document 16   Filed 02/16/22   Page 13 of 17

### E. The Tax Penalty Levied on Mr. Anderson does not Violate the Fourteenth Amendment's Due Process Clause

Mr. Anderson's fifth and sixth claims allege that the tax penalty violated both his procedural and substantive due process rights under the Fourteenth Amendment.[56] Procedural due process is violated when there is a "deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection."[57] Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'"[58]

Mr. Anderson fails to state a due process claim because he was not deprived of his property. Mr. Anderson does not claim that the penalty itself was erroneous or otherwise unconstitutional.[59] He admits that he underpaid his taxes, and that Anchorage Municipal Code § 12.15.060(C) provides for a ten percent penalty on unpaid balances after a seven-day grace period has elapsed. Mr. Anderson states that he voluntarily paid the penalty after speaking with the head cashier.[60]

The main basis for Mr. Anderson's claim is that—theoretically—if the Municipality never sent him a notice and he had not independently realized his account

---

[56] Docket 1 at 39–42; Docket 14 at 19–25.
[57] *Vazquez Romero v. Garland*, 999 F.3d 656, 666 (9th Cir. 2021).
[58] *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009).
[59] Docket 14 at 20–21, 23. *See Multistar Indus., Inc. v. U.S. Dept. of Transp.*, 707 F.3d 1045, 1056 (9th Cir. 2013) (no procedural due process violation where plaintiff did not challenge the validity of the underlying deprivation).
[60] *See Hill v. Giani*, 296 P.3d 14, 24 (Alaska 2013) ("Absent coercion, voluntarily relinquishing a property interest does not trigger due process protections).

*Anderson v. Municipality of Anchorage*   Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss   Page 14
Case 3:21-cv-00139-JMK   Document 16   Filed 02/16/22   Page 14 of 17

was delinquent, there could be severe consequences.[61] But that did not occur.[62] The Municipality had not taken steps to collect the penalty, it did not charge interest on the late payment, and Mr. Anderson even acknowledges that the policy of the Municipality is to send notices of delinquency. Indeed, in 2015, when the Municipality unfairly levied a penalty on his account, it sent him a notice. Mr. Anderson challenged the penalty, and the Municipality adjusted the penalty to $0. In short, neither Mr. Anderson's voluntary payment nor the speculative injuries constitute a deprivation of his property.[63] As such, the question of notice or opportunity to be heard is irrelevant, and his substantive due process claim must fail because he was not denied a substantive right.

Without deprivation of a property interest or other right, Mr. Anderson cannot state a claim for procedural or substantive due process. With respect to Claims V and VI, the Motion to Dismiss is GRANTED. Claims V and VI are DISMISSED WITH PREJUDICE.

## F. The Tax Penalty Levied on Mr. Anderson does not Violate the Fourteenth Amendment's Equal Protection Clause

Mr. Anderson's seventh claim alleges that the Municipal tax penalty is enforced arbitrarily in violation of the Fourteenth Amendment's Equal Protection Clause. He states that the Municipality allows the head cashier to use her discretion to modify tax

---

[61] Docket 1 at 40–41.
[62] See *Munns*, 782 F.3d at 409; see also *Schroeder v. Diamond Parking, Inc.*, Civ. No. 12–00378 HG–RLP, 2013 WL 5348472 at *9 (D. Haw. Sept. 17, 2013) (plaintiff alleged multiple consequences that he believed could occur because of failure to pay parking penalty but did state a due process claim because those consequences did not occur).
[63] See *Schroeder*, 2013 WL 5348472 at *9 ("Plaintiff's unsubstantiated fears about possible consequences for failing to pay the penalty notice do not transform the voluntary payment into a deprivation of property.")

*Anderson v. Municipality of Anchorage*     Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss     Page 15
Case 3:21-cv-00139-JMK    Document 16    Filed 02/16/22    Page 15 of 17

penalties, and that "on information and belief" he understands the cashier to have adjusted penalties of persons in his same situation. Mr. Anderson claims this is a violation of his equal protection rights because some taxpayers are arbitrarily treated differently than others.[64]

The Court first notes that the Municipality's Motion has not directly addressed this claim. However, it has explicitly moved to dismiss the entire Complaint and Mr. Anderson's Opposition briefs this claim. As such, the Court evaluates the claim under Rule 12(b)(6).[65]

Mr. Anderson has not alleged a protected class. He appears to allege that he has been irrationally singled out, but he does not provide any facts in support besides the assertion that, "on information and belief," other taxpayers in his same situation have had their penalty waived.[66] This bare conclusion of discriminatory treatment is insufficient to survive a motion to dismiss. The Court notes that Mr. Anderson describes how the Municipality waived his tax penalty in 2015. To the extent that his argument refers to this waiver, the discrepancy does not constitute a violation of equal protection because that situation was wholly distinct from the present facts.[67]

However, given Mr. Anderson's pro se status, the Court will dismiss this claim without prejudice and grant Mr. Anderson leave to amend his complaint.[68] To

---

[64] Docket 1 at 43–44.
[65] Reed v. Lieurance, 863 F.3d 1196, 1207 (9th Cir. 2017) (the district court has authority under Rule 12(b)(6) to dismiss a claim *sua sponte*, so long as Plaintiff has opportunity to oppose the motion to dismiss.)
[66] See Docket 1 at 20; Docket 14 at 26.
[67] Docket 1 at 29.
[68] See Lacey v. Maricopa Cnty, 693 F.3d 896, 926–27 (9th Cir. 2012).

Anderson v. Municipality of Anchorage  Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss  Page 16
Case 3:21-cv-00139-JMK   Document 16   Filed 02/16/22   Page 16 of 17

survive a subsequent motion to dismiss, Mr. Anderson must plead <u>specific</u> facts that show he was "intentionally treated differently from others similarly situated, and that there is no rational basis for the difference in treatment."[69] This cannot be a bare assertion that others have been treated differently than him.

With respect to Claim VII, the Motion to Dismiss is GRANTED. The claim is dismissed WITHOUT PREJUDICE and, with respect to this claim only, Mr. Anderson is granted leave to amend his Complaint before March 15, 2022.

### IV. CONCLUSION

For the above reasons, the Municipality's Motion to Dismiss is GRANTED in part and DENIED in part as follows:

With respect to Claim I, the Motion is DENIED.

With respect to Claims II–VI, the Motion is GRANTED, and these claims are DISMISSED WITH PREJUDICE.

With respect to Claim VII, the Motion is GRANTED, and this claim is DISMISSED WITHOUT PREJUDICE. Mr. Anderson is granted leave to amend his Complaint, only with respect to Claim VII, before March 15, 2022.

**IT IS SO ORDERED** this 15th day of February 2022, at Anchorage, Alaska.

/s/ Joshua M. Kindred
JOSHUA M. KINDRED
United States District Judge

---

[69] *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

*Anderson v. Municipality of Anchorage*     Case No. 3:21-cv-00139-JMK
Order Granting in Part and Denying in Part Motion to Dismiss     Page 17
Case 3:21-cv-00139-JMK    Document 16    Filed 02/16/22    Page 17 of 17