

Robert Anderson
4908 Roger Drive
Anchorage, Alaska 99507
Phone (907) 223-1579
aktaxappeal@gmail.com

RECEIVED
FEB 03 2023
CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROBERT ANDERSON, ) <br> ) <br> Plaintiff, ) <br> Pro Se ) <br> ) <br> v. ) <br> ) <br> MUNICIPALITY of ANCHORAGE, ) <br> ) <br> Defendant. ) <br> _____ ) | Opposition to Motion for <br> Protective Order <br><br> Case No. 3:21-cv-00139-JMK |

## OPPOSITION TO DOCKET 41 MOTION FOR PROTECTIVE ORDER

I, Robert Anderson, representing myself without a lawyer, oppose the court issuing a protective order for the following reasons:

Plaintiff was not aware Anchorage consider that a meet and confer under Fed.R.Civ.P. 26(c)(1) for the purpose of filling a Motion for Protective Order occurred as a result of the January 5, 2023 conversation with Mr. Halloran. A Motion to Quash, see response to Request for Production #37, was mentioned during the conversation but plaintiff's understanding of that procedure is it applies to non-parties and may apply to blanket protective orders.

At least one Alaska District judge has stated proof of meet and confer prior to

Page 1
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 1 of 20

motion must be written word and not merely conversation. Plaintiff does not intend to maintain detailed telephone conversation records but instead to follow up in writing when appropriate. When disputes require meet and confer a written record avoids verbal misunderstandings and allows plaintiff to research matters prior to expressing a position. Plaintiff intends to respond to Anchorages January 27, 2023 responses to Request for Production in this manner but feels compelled to respond to the Docket 41 Motion for Protective Order to preserve rights.

Anchorage is seeking a blanket protective order, no actual document has been identified. Privilege is itself a federal common law matter, without even a privilege log it is difficult to determine what Anchorage seeks to protect. Anchorage cannot manage policy through privileged communications, if 42 U.S.C. § 1983 permitted legal counsel to discuss policy with force of state law with every municipal employee under privileged communications every municipality would claim privilege without due regard to their corporate structure and 42 U.S.C. § 1983 would not serve it's purpose.

Anchorage has not yet fully acknowledged plaintiff's claim is against the Municipality of Anchorage in it's municipal corporation capacity. To prevail plaintiff must prove a Fourth Amendment unreasonable search occurred by a Anchorage employee and then that the constitutional violation was the result of a policy or custom of the Municipality of Anchorage.

Plaintiff does not dispute a municipal corporation privilege can exist though little caselaw is available, it appears only the 6th Circuit in *Ross v. City of Memphis*, 423 F. 3d 596, 603 (2005) has issued a conclusive decision on the matter, in that case *Memphis*

Page 2
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 2 of 20

asserted a affirmative defense of privilege against a former employee (Crews) who was attempting to use the legal advice of Memphis counsel in his defense.

## Legal Standard

Under Fed.R. of Evidence Rule 501 the common law—as interpreted by United States courts in the light of reason and experience governs Anchorage's claim of privilege. Plaintiff addresses Anchorage's controlling argument of privilege as good cause and the Ninth Circuit balancing test when good cause is shown.

## Policymaker Determination

To the extent a protective order turns on who has authority to make municipal policy, that is a question of state law the court decides separate from a factual question of "does a policy exist". Municipal corporation privilege under federal law depends on how municipal corporation liability might be found to exist under 42 U.S.C. § 1983.

## Good Cause Showing

A 42 U.S.C. § 1983 plaintiff can establish municipal liability in three ways: (1) the municipal employee committed the constitutional violation pursuant to an official policy; (2) the employee acted pursuant to a longstanding practice or custom; and (3) the employee functioned as a final policymaker, *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Plaintiff is entitled to seek discovery on all those means as they are relevant under Fed.R.Civ.P. 26 and plaintiff's complaint.

## PLAINTIFF HAS NOT REQUESTED PRIVILEGED MATERIALS.

Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice,

Page 3
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 3 of 20

*Fisher v. United States*, 425 US 391, 403 (1976).

The assessor's statutory duties are to identify all tax parcels within Anchorage's tax jurisdiction (AS 29.45.160(a)), estimate a appraisal value for each tax parcel on a date certain (AS 29.45.110 (a)) and compile a assessment roll (AS 29.45.160(a)) of all tax parcels & appraisal values. The assessment roll is fixed but for adjustments by the Board of Equalization prior to the Anchorage Assembly legislative act irrevocably fixing a tax obligation. The assessor's duties are those of a public servant conscientiously doing what may be the most difficult job in America to the best of their ability. See also *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011), property appraisal is a business activity not protected by privilege. In municipal corporation taxation the assessment roll states the tax appraisal value of every tax parcel in the jurisdiction, the underlying bases for each tax parcels valuation is public information subject to open records disclosure. The means by which municipal corporations obtain tax parcel improvement data cannot fall under privileged communications, it is a factual matter.

Not until the assessor is involved in a suit in equity brought under *Atchison, T. & SFR Co. v. O'Connor*, 223 US 280, 285-86 (1912) is anything more than business advice contemplated from municipal corporation legal council as no court recognized equity controversy actually exist until overpayment is alleged in a court of competent jurisdiction. In the little understood case, *Great Northern R. Co. v. Weeks*, 297 US 135 (1936) the Supreme Court did nothing more than apply *Atchison* to the facts of the case and issue a decision on the merits. *Atchison* also provides a 11th Amendment remedy, a state official must not deposit (at least any disputed overpayment) into the state treasury

Page 4
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 4 of 20

until a final determination by a court of competent jurisdiction is had unless the state waves 11th Amendment protection, North Dakota (*Weeks*) appears to have waived the *Atchison* prepayment requirement as well in litigating with *Great Northern*. The court reaffirmed *Atchison* in *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation*, 496 US 18, 32 (1990).

Knowledge, skill and experience have been the guiding assessor principals of valuation since Congress enacted, July 9, 1798 (1 Stat. 580), Statute II, Chap LXX "An act to provide for the valuation of Lands and Dwelling Houses, and ...(a)". The assessor oath is found at Section 7 (1 stat. 585). The federal government used returns to collect improvement data, see Section 9 (1 Stat. 585-586), on several occasions the federal government collected taxes from every qualifying tax parcel in the United States under the 1789 law.

The Anchorage Assembly, by and through Assembly Resolution (AR) 1986-295, created an obligation for the assessor to have preformed a particular "appraisal valuation task" at least once every six years, physical review of every tax parcel.

> AR 1986-295; "Section 1. The assessor shall arrange for all property subject to taxation under Title 12 of the Anchorage Municipal Code to be physically reviewed and individually reappraised no less frequently than once every six years. The first six-year cycle shall commence on January 1, 1985 and shall end on December 31, 1991."

The Property Appraisal Division is required to report quarterly, Anchorage Municipal Code (AMC) 6.40.016, on it's compliance status regarding AR 1986-295. AR 1986-295 is available through the Assembly portal at muni.org and while not codified law

Page 5
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 5 of 20

it is a lawmaker act with force of state law. AR 1986-295 is attached as Exhibit 1.

It should be acknowledged a lawmaker enactment, without more, creates no obligation for implementation through written standard operating procedure leaving it almost indistinguishable from long standing practice (custom) but for the lawmakers act.

## Test for Protected Corporate Communications

The test for protected corporation communications is found in *Upjohn Co. v. United States*, 449 US 383, 394 (1981). Properly the Anchorage assembly should attempt to identify a control group of senior management personal which can provide information to their legal counsel in order to obtain legal advice. Interpretation of any state statute a municipal corporation contemplates acting under necessarily follows that path. To the extent at some later date Anchorage lawmakers sought additional information through a newly reassembled control group of senior management personal AR 1986-295 has not been amended or repealed. Any control group of senior management personal would be expected to understand and respect the corporations deliberative work product privilege. Lawmakers, as responsible elected officials, can identify potential conflicts and amend or repeal laws timely or as is often the case leave well enough alone until courts decide the issue. Anchorage lawmakers have additional input through the Ombudsman.

A government administrative official acting as a policymaker (Policymaker #1) and seeking legal advice on what would eventually be recognized as a state law under 42 U.S.C. § 1983 has deliberative work product privilege in creating the policy (Policy XYZ). If Policymaker #1 retires or leaves and is replaced by Policymaker #2, Policymaker #2 is now the employee recognized as the responsible person for Policy

Page 6
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 6 of 20

XYZ and could request legal advice on Policy XYZ as it applies to current common law, clearly a municipal corporation has attorney privilege if Policymaker #2 maintains confidentiality and any employee interviews are limited to factual inquiry as to how Policy XYZ has been implemented, the employees interviewed are not seeking legal advice from the municipal corporation legal counsel therefore their interviews are not privileged. Legal counsel is not preparing for litigation or conducting a internal investigation, Policymaker #2 was just unable to provide enough detail about Policy XYZ's "as applied" operation. If the legal advice Policymaker #2 receives on Policy XYZ raises serious doubts about the constitutionally of Policy XYZ, and Policymaker #2 wishes to avoid personal liability under 42 U.S.C. § 1983 or leave the municipal corporation exposed to liability under 42 U.S.C. § 1983 a change to Policy XYZ is a reasonable solution. If Policymaker #2 decides to replace Policy XYZ with a new Policy ABC, the work product privilege is again invoked, Policymaker #2 creates Policy ABC to replace Policy XYZ.

If Policymaker #2 seeks advice from legal counsel on how best to comply with existing Policy XYZ that is business advice as legal counsel has not provided advice on the legal ramifications of Policy XYZ.

Policymaker #2 (or even Policymaker #1) could seek lawmaker clarification of any policymaking duties he is responsible for. If a municipal corporation desires a specific procedure be preformed by it employees a policymaker has a right to clear guidance from lawmakers, this is especially true when federal constitutional rights are involved.

If municipal corporation lawmakers enact law requiring a municipal employee to

Page 7
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 7 of 20

preform a task any legal counsel communications with that employee are not privileged, the employee is seeking business advice on how best to comply with the lawmakers enactment. The court has recognized lawmaker delegation to a administrative branch policymaker can exist. *Oklahoma City v. Tuttle*, 471 US 808, 819 (1985) cites *Bennett v. City of Slidell*, 728 F. 2d 762 (5th Ckt. 12 Judge Panel, 1984), *Bennett* decided under what facts a lawmaker delegation occurs "The governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board." is the recognized means of lawmakers to delegate some or all of their power.

The court has provided a remedy in the event federal rights are violated through widespread practice. See *Adickes v. SH Kress & Co.*, 398 US 144, 167-168 (1970), a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law.". The practice of physical inspection of real property in Alaska can be found in *Anchorage Independent School District v. Stephens*, 370 P. 2d 531, 532 (1962 AK Supreme Court), "The original assessment was made in the spring or summer of 1952 following a physical inspection of the property by one of the District's tax appraisers.". It is conceivable the practice of physical inspection of real property tax parcels already existed in the Greater Anchorage Borough &/or the City of Anchorage prior to the 1974 formation of the Municipality of

Page 8
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 8 of 20

Anchorage and the widespread practice simply continued when borough and city employees became Municipality of Anchorage employees.

Anchorage's motion at section B makes a one sentence argument *Upjohn v. United States*, 449 U.S. 383, 394 (1981) creates a attorney/client privilege for communications with municipal employees. *Upjohn* cannot be read as a right for corporation legal counsel to communicate with corporation employees in such a manner, Anchorage has not provided any evidence their employees were given and understood a corporate Miranda warning or why senior management personal could not provide needed communications. Plaintiff is required under 42 U.S.C. § 1983 to identify the employee who, acting under state law, entered plaintiff's tax parcel. That is a one question interrogatory. Anchorage has not plead a affirmative defense the employee was not following policy or standard operating procedure (written or unwritten).

Corporation legal counsel represents the corporation and while individual employees can provided information to counsel preparing for litigation or conducting a internal investigation what is sometimes referred to as the corporate Miranda warning is required for Federal Courts to recognize the privilege. The elements of a corporate Miranda warning are:

- The privilege over communications between the attorney and the employee belongs solely to, and is controlled by, the corporation and
- Legal counsel may choose to waive the privilege and would be obligated to inform corporation officials if a policy violation occurred.

see *Upjohn Co. v. United States*, 449 US 383, 394 (1981). Without the corporate Miranda

Page 9
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 9 of 20

warning having been made to a employee no privilege lies to the corporation. Since the employee is not seeking legal advice no privilege lies to the employee.

*Upjohn's* at 394-395 created a five factor test to further address employee interviews involving legal counsel preparing for litigation or conducting a internal investigation, 1) the information is necessary to supply the basis for legal advice, 2) the information is not available from senior management personal, 3) the communications concerns matters within the employees scope of duties, 4) the employee understands the communications is for the purpose of providing legal advice to the corporation and 5) the communications are considered confidential and kept confidential.

Anchorage recognizes they live in the *Upjohn* corporate world and *St. Louis v. Praprotnik*, 485 US 112, 126 (1988) adds the limitation, §1983 could not serve it's intended purpose if policymaking permitted delegation to whomever. State law creates and charters municipal corporations, 42 U.S.C. §1983 properly stated as positive law statutory enactment, "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes.", Act April 20, 1871, ch. 22, 17 Stat. 13 has been in effect since long before Alaska statehood in 1959 and provides all municipal corporations notice of the limitations placed upon them under federal statutory law. Anchorage has failed to take notice of 42 U.S.C. § 1983, _"Whatever "policy" Mr. Anderson may be trying to establish is simply irrelevant to the issue remaining before the Court."_, pages 3 & 4 of Anchorage's motion for protective order. Plaintiff's claim is not a personal liability claim, it is a municipality liability claim that a municipal employee acting with force of state law violated a US Constitutional right of plaintiff

Page 10
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 10 of 20

AND the municipality itself was the source of that violation through policy or custom.

As the above analysis indicates if lawmakers are the source of policy, in this case Assembly Resolution (AR) 1986-295, dated December 9, 1986 the assessor and field data collector are employees following the policy established by the Anchorage Assembly.

If the assessor is acting under AS 29.45.130(b)'s 1999 amendment, effective March 27, 1999 (am § 1 ch 4 SLA 1999) that legislation is only distinguishable if Anchorage lawmaker "physical review" means something different than what the state statute describes as investigation. Important questions on the State Legislatures authority to grant state legislative power to a mid-level municipal employee as a sole determiner of corporation policy with force of state law is not a normal concern but may be relevant in the instant case. It is what law the assessor and field employee believe they are acting under, not the department of laws arguments as to which laws apply that is relevant.

State law, including a states constitution, determines who has policy making authority, typically the 42 U.S.C. § 1983 factual question becomes did that policy making authority result in a decision by the policymaker or lawmaker that violated a citizens constitutional right. AR 1986-295 is purely and act by lawmakers, that they may have misinterpreted AS 29.45.150 is not relevant. AS 29.45.130(b) is an act by the state legislature, it does not require an assessor to enter property for investigation.

A) Anchorage's pleading, paragraph 79 answer, contemplated a need for discovery on the application of AS 29.45.150 in Anchorages tax jurisdiction district. Anchorage, through legislative action, passed Assembly Resolution (AR) 1986-295, on December 9, 1986 citing AS 29.45.150 as the relevant state statutory law.

Page 11
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 11 of 20

In a republican form of government the legislative body has authority to make all laws proper for operation of the municipal corporations within the defined limitations of superior law and charter.

B) Anchorage's charter ordnance, Section 5.04 - Municipal attorney, regarding legal advice can only be read to encompass senior management policymakers and lawmakers, "The attorney shall advise and assist the municipal government on legal matters.". When a party discloses privileged information to a third party who is not bound by the privilege the court recognizes a waiver has occurred as the privilege is in the full control of the senior management policymaker and attorney. The Department of Law is directly accountable to the mayor, any other municipal employees must access the law department through actual or implied consent by the mayor. The corporate structure, and particularly municipal corporation structure, necessitates administration senior management or the legislative branch make policy, always within the constraints of the US Constitution, and convey and manage that policy to it's employees.

C) Anchorage is seeking to utilize privilege inconsistent with Fed.R.Civ.P. 1, seeking a blanket protective order on documents that might be relevant to both plaintiff's claim and Anchorage's defenses unfairly prejudice plaintiff.

The attorney-client privilege does not apply to factual information, if the court where to find legal advice is being given under federal common law any underlying factual information provided to legal counsel is not protected, *Upjohn Co. v. United States*, 449 US 383, 395 (1981).

Anchorage seeks a blanket protective order over all communications they consider

Page 12
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 12 of 20

attorney-client privilege. Should the court find good cause for protection of some of the yet to be identified documents, i.e. those falling outside the corporate attorney privilege, the next step is to review balancing considerations and possible redaction.

## Legal Standard for Balancing Protective Order

The Ninth Circuit has directed courts, when balancing is a consideration, to review the factors identified by the Third Circuit in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir.1995), see *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 426 n.5 (9th Cir. 2011).

### 1) *whether disclosure will violate any privacy interests;*

The complaint alleges Anchorage, acting through it's employee, in support of a public function violated plaintiff's Fourth Amendment rights. The docket is public.

To the extent Anchorage's policy or custom may have operated for decades and passed through many hands plaintiff is not seeking to hold any individual person accountable.

### 2) *whether the information is being sought for a legitimate purpose or for an improper purpose;*

The allegations in plaintiff's complaint support all three means by which Anchorage may be liable, lawmaker, policymaker and long standing practice. That there may be relevant information under all three circumstances cannot become a limitation on one over another.

The only remaining issue being litigated from plaintiff's complaint is a Fourth Amendment unreasonable search claim under a municipal policy or custom. Anchorage's

Page 13
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 13 of 20

answer includes defenses one of which (Answer Affirmative Defense #4) is Anchorage's policy or custom is an exception to the warrant requirement of the Fourth Amendment.

Discovery on Anchorage's defense is relevant subject matter, exceptions to the warrant requirement of the Fourth Amendment are not individualized but instead apply to a class of permissible suspicionless searches under what is commonly referred to as the "Special Needs" doctrine. Courts are expected to develop a full record for application of this defense, granting protective orders is inconsistent with the fact intensive inquiry on operation of Anchorage's field data collection practice necessary for plaintiff to respond to the defense and the court to issue a proper opinion.

A package of documents may be necessary to piece together Anchorage's actual practices if a clear written procedure or procedures does not exist in a manual.

### 3) *whether disclosure of the information will cause a party embarrassment;*

If embarrassment is relative Anchorage's practices likely exist in various similar forms all over the United States, see factor 7 for details.

Non-pecuniary harm to individuals should be addressed through redaction, it is the operation of the policy that is material to the instant case. To the extent the field data collection process was managed in coordination with the Municipal Attorneys office, a privilege log is not before the court. Individuals are not the focus the remedies sought by plaintiff, the individuals involved happen to be in the wrong place at the wrong time.

Anchorage has a obligation to inform citizens when property rights are implicated, the public will decide if failure to meet that obligation is an embarrassment to the community.

Page 14
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 14 of 20

*4) whether confidentiality is being sought over information important to public health and safety;*

The safety of municipal employees entering private property under the allegations of the complaint may create a safety issue for those employees. As the docket is public and the claim presents what may be a matter of first impression, Forth Amendment rights as applied to taxpayer land ownership, clear law has not been established. Municipalities all over the United States acting under state laws should be given every opportunity to understand the Fourth Amendment may take precedence over the industries desire for data collection and avoid placing their employees in harms way.

*5) whether the sharing of information among litigants will promote fairness and efficiency;*

To the extent fairness is determined by what is relevant under discovery Anchorage proposes a blanket protective order, a procedure not contemplated under Fed.R.Civ.P. 26(c)(1) good cause or these *Glenmede* factors. As it stands Anchorage wishes to share no employee communications with plaintiff which is neither fair nor efficient.

*6) whether a party benefiting from the order of confidentiality is a public entity or official; and*

Anchorage is a municipal corporation chartered by the State of Alaska,

*7) whether the case involves issues important to the public;*

The Fourth Amendment is irrevocable Federal law applicable to all the States of the Union. State ad valorem real property taxation can only operate within the limitations of the Fourth Amendment. The Federal government is the tax sovereign in territories some of which are under the US Constitution, those tax parcels would also fall under Fourth

Page 15
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 15 of 20

Amendment protections if they are found to exist.

The defense pleading #4, exception to the warrant requirement of the Fourth Amendment, permits the court to provide a complete decision to both sides, Judgment will decide even if plaintiff prevails on the claim of unreasonable search if Anchorage has a special need allowing them continue to utilize their policy. Because a special needs inquiry is fact intensive, *Chandler v. Miller*, 520 US 305, 314 (1997), removing what could be some of the most relevant information about how Anchorage's policy actually operates leaves the court without facts material to the defense. *Vernonia School Dist. 47J v. Acton*, 515 US 646, 660 (1995) identifies government interest as a factor, *Board of Ed. of Independent School Dist. No. 92 of Pottawatomie Cty. v. Earls*, 536 US 822, 838 (2002) confirms special needs follows president and applies to similar circumstances.

A sort of government-industry alliance appears to consider state law conclusive of a right of entry for data collection on improved tax parcels, caselaw reinforces that impression. See *Strand v. Spokane County Assessor*, UNPUBLISHED Wash Court of Appeals, 3rd Div. 2013 "An assessor who establishes a property's value using statistical update techniques "shall cause taxable real property to be physically inspected and valued at least once every six years." RCW 84.41.030, .041. The property tax statute requires physical inspection of the exterior of property to ensure correct valuation. *State v. Vonhof*, 51 Wn. App. 33, 40, 751 P.2d 1221 (1988) (assessor's presence on exterior of property under RCW 84.40.025 is not a search within state or federal constitution).".

*State ex rel. Bd. of Equalization v. Barta*, 188 P. 3d 1092, 1096 (Nev Supreme Court 2008) "By statute, assessors are required to determine taxable value by physically

Page 16
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 16 of 20

reappraising properties at least once every five years.". *Lane v. Supervisor of Assessments*, 135 A. 3d 828, 830 (Md Court of Appeals 2016) "The value of real property is determined by the State Department of Taxation and Assessment or its local Supervisor of Assessments "once in every 3-year cycle based on an exterior physical inspection of the real property." TP §8-104(b)(1).". *Board Of County Commissioners Of Johnson County v. Jordan*, No. 114,827 (Unpublished Kan Supreme Court Feb. 24,2016) - "(2) that the value of real property shall not be increased unless the county appraiser has reviewed the latest physical inspection, and documentation ..." was upheld in THE UNCONSTITUTIONAL PROVISIONS ARE SEVERABLE section of the decision.

Oklahoma Statutes 68 OK Stat § 68-2821 (2014), "A. Each county assessor shall cause real property to be physically inspected as part of the visual inspection cycle and shall require such examination as will provide adequate data from which to make accurate valuations.". Indiana Code IN Code § 6-1.1-4-4.2(a)(6) (2020), "(6) The reassessment of parcels: (A) must include a physical inspection of each parcel of real property in the group of parcels that is being reassessed;".

The rights of private property owners in the context of the Fourth Amendment & State sovereign power of taxation has not been litigated under the plaintiff's theory of the claim, in substance James Otis's argument in 1761, general warrants in taxation matters are unconstitutional, see *Stanford v. Texas*, 379 US 476, 481 (1965) for a brief description of Mr. Otis's impact on the yet to be formed United States of America. The Supreme Court has on many occasions spoken of Mr. Otis's 1761 arguments in conjunction with the Fourth Amendment, *Carpenter v. US*, 138 S. Ct. 2206, 2213 (2018), *Frank v.*

Page 17
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 17 of 20

*Maryland*, 359 US 360, 364 (1959) [ Overruled by *Camara v. Municipal Court of City and County of San Francisco*, 387 US 523, 528 (1967) which at 525 identified abuse of *Frank* at "all levels of government" ], *Boyd v. United States*, 116 US 616, 624-625 (1886). Public interest in Fourth Amendment rights existed in the colonial territories of the British Empire and has never diminished.

## 8) *additional balancing considerations beyond Glenmede.*

Considerations beyond a insatiable desire for data may take precedence over third party technical standards. The private sectors desire to sell data driven products (multiple regression analysis software with priority algorithms and field data gathering software) and local governments attempts to minimize real property tax collection issues must be understood by the court in deciding Anchorage's affirmative defense.

A recognition a assessor is a employee of a municipal corporation and unless some yet to be identified exceptional circumstance exist, using knowledge, skill and judgment to value tax parcels is not policy making at any level when entry onto private property without consent is removed. Doing so would allow assessors to focus on their duties as public servants performing a difficult but vital task.

Municipal tax department employees or agents task with field work responsibilities should know and understand Fourth Amendment limitations, a through understanding of all documents which identify the actual practices of Anchorage is relevant.

The ninth circuit has recognized, *Henry v. County of Shasta*, 132 F. 3d 512, 519 (9th Ckt. 1997), post event evidence can sometimes be material to municipal liability or in the instant case even relevant to defenses. Failure to change policy would reinforce the

Page 18
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 18 of 20

determination a policy exist, modification of the policy would leave doubt about the legitimacy of Anchorages "special need" to collect data in the manner alleged.

## Conclusion

Anchorage has not alleged facts essential to a *Upjohn Co. v. United States*, 449 US 383, 394 (1981) finding of privileged communications with employees, the status of the assessor as a employee or policymaker has not been determined, Anchorage's motion seeks protection from even producing a log of communications falling under plaintiff's request for production #10 which was narrowly tailored to prevent controversy. At best the assessor is a policymaker and if confidentially is maintained Anchorage holds a privilege with regard to legal advice communications with the assessor.

Anchorage's factual allegation comes down to Ms. Christensens declaration request for production #10 is burdensome and oppressive, searching decades of Department of Law records is a unreasonable interpretation of plaintiff's request. The assessors business records would be the logical starting point unless legal counsel has specific knowledge of third party communications. As *Burlington Nort. & Santa Fe Ry. v. Dist. Court, MT*, 408 F. 3d 1142, 1149 (9th Ckt 2005) makes clear a privilege log is a expected reply under Fed.R.Civ.P. 34 when documents are withheld, plaintiff attempted to avoid what appears to be a common occurrence of seeking a court order to compel a party to produce a privilege log by explicitly requesting the log be produce in the response when relevant documents are not provided. Plaintiff contemplated a reasonable response as per *Albert v. Laboratory Corp. of America*, 536 F. Supp. 3D 798, 800-801 (2020), if Anchorage legal counsel is aware maintaining "physical review/inspection/investigation" practices is

Page 19
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 19 of 20

becoming burdensome the amount of communications would likely increase and a reasonable response would identify a greater number of documents.

The pleadings govern the proceedings, Rule 26(f) does not contemplate as a matter of course pro se litigants entering into stipulations with represented parties meaning the rules of discovery, which cannot be mooted based on a parties desires, are controlling. Plaintiff's December 6, 2022 request for production was made as specific and limited as possible with the intent to obtain the bases for interrogatories and admissions as to material facts relevant to plaintiff's claim and Anchorage's defenses. Fourth Amendment claims are fact intensive by their nature, in this case the manner in which Anchorage manages Property Appraisal Department entry onto private property is relevant.

Caselaw on the application of federal common law privilege to municipal corporation employees is lacking but important, municipal corporation legal council should have clearly defined guidelines for communications with employees.

Anchorage has failed to show good cause for the court to issue the protective order they seek, to the extent personal embarrassment can be avoided redacting names is reasonable if the authenticity of the document can be maintained.

Dated FEB 8, 2023.

*Robert Anderson*

Robert Anderson, Pro Se

Page 20
Anderson v Municipality of Anchorage, Case No. 3:21-cv-00139-MJK
Opposition to Docket 41 Motion for Protective Order
Case 3:21-cv-00139-JMK   Document 42   Filed 02/08/23   Page 20 of 20