Robert Anderson
4908 Roger Drive
Anchorage, Alaska 99507
Phone (907) 223-1579
aktaxappeal@gmail.com



JUN 12 2023

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROBERT ANDERSON, )<br>)<br>Plaintiff, )<br>Pro Se )<br>)<br>v. )<br>)<br>MUNICIPALITY of ANCHORAGE, )<br>)<br>Defendant. )<br>_____) | Reply To Docket 53<br><br><br>Case No. 3:21-cv-00139-JMK |

**REPLY TO OPPOSITION TO RULE 12(c) MOTION FOR PARTIAL JUDGEMENT ON THE PLEADINGS**

Plaintiff confirms the motion at Docket 48, RULE 12(c) MOTION FOR PARTIAL JUDGEMENT ON THE PLEADINGS is a Rule 12(c) motion. Plaintiff is seeking judgment on Anchorage's affirmative defense ¶ 3. Plaintiff has not sought Rule 12(c) judgment on plaintiff's claim or any other Anchorage defense. Anchorage's answer pleading to plaintiff's paragraph by paragraph allegations are inconsistent with their ¶ 3 affirmative defenses reasonable ascertainable facts, in Anchorage answer ¶ 155 Anchorage denied a Anchorage employee gathered information while on plaintiff's private property but their ¶ 3 affirmative defense is an Anchorage employee entered

plaintiff's tax parcel for investigation. Anchorage has not identified any fact distinction between their ¶ 3 affirmative defense and answer ¶ 155 in there Docket 53 opposition.

Plaintiff reads the courts procedural rules as acknowledging stipulations are mutually beneficial agreements the court will interpret and uphold much like contracts and pro se litigants would be at a considerable disadvantage in attempting to negotiate stipulations with an opposing parties legal council. The only Rule 26(f) meet and confer requirement not requiring pro se litigant participation is stipulation discussions. Plaintiff is left with motion practice as the means to resolve issues. Anchorage may be confused, see Docket 53 page 4 section II, because Anchorage's ¶ 3 affirmative defense is not reconcilable with Anchorage's answer pleadings unless Anchorage construed plaintiff's complaint pleadings so narrowly they at best minimally comply with court rules. Anchorage's ¶ 3 affirmative defense plainly confuses the issues in the case, the complaints allegations are Anchorage has a policy or custom of entering real property to gather information, the policy or custom is a search under the Fourth Amendment and the search is unreasonable. Anchorage is attempting to argue if they in fact violated plaintiff's constitutional rights they did so under a constitutional state statute, not a municipal policy or custom.

The case is at the dismissal stage, narrowing the issues before the court is prudent procedure under Federal Rules. A Rule 12(c) opinion is not a decision on the merits, it falls in the same category as Fed. R. Civ. P. 12(b)(6) opinions, it is a decision on the legal sufficiency of the pleadings applied to the relevant law. A motion for judgment on the pleadings challenges the legal sufficiency of the opposing party's pleadings, *In Re*

Anderson v Municipality of Anchorage  
Reply To Opposition To Rule 12(c) Motion For Partial Judgment On The Pleadings  
Case No. 3:21-cv-00139-MJK  
Page 2

Case 3:21-cv-00139-JMK   Document 55   Filed 06/12/23   Page 2 of 16

*Manstrom-Greening v. Lane County*, 393 F. Supp. 3D 1035, 1038 (2019). Anchorage's ¶ 3 affirmative defense most set forth new facts that avoid the legal effects of plaintiff's allegations, they instead focus their opposition on the merits and a need for discovery.

The court discussed the use of Alaska Stat. § 29.45.130(b) as a affirmative defense in it's Order Granting in Part and Denying in Part Motion to Dismiss (Docket 16) at page 8. Anchorage's ¶ 3 affirmative defense uses the term "privileged to act"in regards to Alaska Stat. § 29.45.130(b) and in their opposition to plaintiff's Rule 12(c) motion cited no federal case law in support of the defense. Anchorage has not argued AS 29.45,130(b) limits are outside the boundaries of a constitutionally protected area or their AS 29.45,130(b) defense is not a physical intrusion.

Plaintiff's reading of facts alleged in Anchorage's affirmative defense ¶ 3, a Anchorage employee entered plaintiff's real property for the purpose of investigation and investigated, are not disputed by Anchorage. At Docket 53 page 3 Anchorage clarifies it's defense, "MOA argues that the tax assessor was legally authorized to enter the real property at issue, pursuant to AS 29.45,130(b) to perform his required duties to assess the value of real property". The legal authority to act under state statutory law is not a cognizable affirmative defense, Anchorage's argument relies on the ruling of Judge Reese, (@ Docket 53 page 7) extending the Exception to Warrant Requirement—Exigent Circumstances, *Weltz v State*, 431 P.2d 502, 505 (1976) to the circumstance of a tax appraisers knock on the door of a single family detached dwelling. Exigent Circumstances involve the seizure of evidence to protect against it's destruction, a search is a necessary element of a seizure. Plaintiff has not alleged any seizure occurred and
Anderson v Municipality of Anchorage  
Reply To Opposition To Rule 12(c) Motion For Partial Judgment On The Pleadings  
Case No. 3:21-cv-00139-MJK  
Page 3

Case 3:21-cv-00139-JMK  Document 55  Filed 06/12/23  Page 3 of 16

Anchorage's affirmative defense ¶ 3 has not alleged plaintiff was attempting to destroy his home to avoid paying future real property ad valorem taxes in violation of some police power of the municipality relating to a appraisers unheard knock on the door. In the alternate Judge Reese finds evidence in a persons possession at a police station and seen by law enforcement personnel is not a search which can not be reconciled with the seizure of the piece of paper. *Weltz* has been cited several times for it's protections at 506, the primary purpose of the Alaska constitutional provisions is the protection of "personal privacy and dignity against unwarranted intrusion by the State.", see the well reasoned opinion in *McKelvey v. State*, 474 P. 3d 16, 30 footnote 69 (Alaska: Court of Appeals 2020) reviewing federal Fourth Amendment law before applying *Weltz's* acknowledgment Alaska citizens receive greater protections than may be available under federal law. If anything *Weltz* would support plaintiff's case be decided on state law grounds if such a claim had been made. Also see *ANCHORAGE POLICE v. Mun. of Anchorage*, 24 P. 3d 547, 550 footnote 14 (2001).

It has been settled since *Lanza v. New York*, 370 US 139, 142 (1962) "... the Fourteenth Amendment gives to the people like protection against the conduct of the officials of any State.", the statement is in the context of the Fourth Amendment. Plaintiff in the instant case has sought federal protection as is my right.

Anchorage is the sole defendant in this action, they are a municipal corporation and a person within the meaning of 42 U.S.C. § 1983. Anchorage is not a government official or individual within the meaning of 42 U.S.C. § 1983. Anchorage's employees are 3rd parties for the purposes of action before the court, having knowledge of relevant facts

does not make them quasi defendants. Any law of privilege defense a individual Anchorage employee might possess under federal law is not transferable to Anchorage.

Plaintiff's Fourth Amendment unreasonable search claim is commonly referred to as a *Monell* claim from the courts holding in *Monell v. New York City Dept. of Social Servs.*, 436 US 658, 663 (1978). Monell overruled *Monroe v. Pape*, 365 US 167, 187 (1961) which held municipal corporations are not persons within the meaning of "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes.", Act April 20, 1871, ch. 22, 17 stat. 13, the positive law codified at 42 U.S.C. § 1983. It is not uncommon to name both a municipal corporation and individual employees of the corporation in their personal capacities as defendants as only a individual (real person) acting under color of state law can actually violate the Fourteenth Amendment. Plaintiff elected to name only Anchorage as a defendant since there appears to be no clearly established law which would put an individual on notice entry onto single family residential private property to gather tax appraisal information violates any federal law.

## MONELL LIBALITY at the MERITS STAGE

The only claim before the court is municipal corporation liability under *Monell v. New York City Dept. of Social Servs.*, 436 US 658, 691 (1978). There are several ways to establish "Monell liability," see *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). At the merits stage of the instant case facts relevant to the particular Anchorage policy or custom and Anchorage's conduct on plaintiff's tax parcel will be presented to the court as while as presumably Anchorage's affirmative defenses. Rule 12(c) properly disposes of a

defense not cognizable under the particulars of the case during the dismissal stage.

## GOOD-FAITH DEFENSE

To the extent Anchorage's ¶ 3 is attempting to invoke reliance on AS 29.45.130(b) as a good-faith defense, local governments "may invoke an affirmative defense of good faith to retrospective monetary liability under 42 U.S.C. § 1983, where they acted in direct reliance on then-binding Supreme Court precedent and presumptively-valid state law." *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n,* 38 F.4th 68, 71 (9th Cir. 2022) applying *Danielson v. Inslee,* 945 F.3d 1096, 1097 (9th Cir. 2019) to county government. The full extent of the courts holdings on municipal corporation retrospective monetary liability under 42 U.S.C. § 1983 is yet to be determined, it appears to be a narrow exception, but irrelevant to the present controversy.

Plaintiff's Rule 26(f) compensatory damages disclosure notified Anchorage plaintiff is seek $1 (one dollar) in monetary compensation, an amount considered adequate to satisfy the redressability element of a plaintiff's claim for a completed violation of a legal right, *Uzuegbunam v. Preczewski,* 141 S. Ct. 792, 802 (2021). The good-faith defense goes to damages, not the merits of the violation. In effect plaintiff's claim is a declaratory judgment and injunctive relief claim which cannot be mooted even if Anchorage changed their behavior because a actual controversy of entitlement to the $1 must be decided.

Anchorage has not abandoned their ¶ 3 defense even with the knowledge compensatory damages are limited to $1, see Docket 40 page 2 and Docket 46 page 4. Anchorage is arguing the presumptively-valid state law component in their Docket 53 opposition, the limits of the "then-binding Supreme Court precedent " may limit the

defense to more particular facts then available in the instant case and the lower limit for any damages, weather called compensatory or nominal, appears to be $1.

To the extent Anchorage is arguing a *Danielson* good-faith exception it is unclear what discovery would be be beneficial to them.

## THE LAW OF PRIVILEGE AS A DEFENSE

The law of privilege as a defense is recognized under federal law, *Barr v. Mateo*, 360 US 564, 569 (1959) under specific circumstances. Far more common today are the terms qualified immunity and absolute immunity but a government official acting in accordance with the law of privilege would appear, in some circumstances, to have a cognizable defense against personal liability.

### *ELEMENTS of a LAW of PRIVILEGE DEFENSE*

Government officials sued as individuals, in performance of their official duties, can plead a law of privilege affirmative defense. A municipal government official sued in their official capacity is as *Hafer v. Melo*, 502 US 21, 25 (1991) confirms, the municipal corporation itself. The *Hafer* court, again @ 25, acknowledges officials sued in their personal capacities may assert personal immunity defenses such as objectively reasonable reliance on existing law.

There are distinctions between government officials sued in their official capacity, government officials sued in their personal capacities, government employees acting within their duties sued in their personal capacities, government employees acting under color of state law but outside their duties sued in their personal capacities, private individuals or companies performing services amounting to actions under color of state

law and municipal corporations. As *Larez v. City of Los Angeles*, 946 F. 2d 630, 645-646 (1991) points out proof of individual and official capacity liabilities sometimes overlap, participation of Anchorage employees in official capacity liabilities is the only claim before the court.

Anchorage attempts to turn the their municipal property appraiser's actions into AS 29.45.130(b) "statutory duties", Docket 53 page 9. Plaintiff's argument at Docket 48, page 17, section III on the use of "MAY" in statutory interpretation does not support Anchorage's statutory duties statement. There is a statutory duty for the assessor to publish a assessment roll and a U.S. Constitutional duty for the state to make any changes in that assessment roll through public hearings before the assembly passes a irrevocable law appropriating funds into the municipal treasury. The duties of municipal property appraiser's are established through the municipality, neither the assessor or any agent has a state statutory duty to enter private property.

Cognizable defenses or immunity rights available to individuals or parties under federal law depend on which category a given defendant falls into. A state law privilege defense was sought in *Pierson v. Ray*, 386 US 547, 555 (1967), the court did not hesitate to transform Mississippi's state law privilege defense into a federal law immunity defense. *Pierson* at 557 acknowledged government agents are not charged with predicting the future course of constitutional law. 42 U. S. C. § 1983 is remedial legislation, *Gomez v. Toledo*, 446 US 635, 639 (1980), when a municipal corporation, through policy or custom, elects to probe the limits of U.S. Constitutional protections they are preforming a grand experiment at taxpayer expense.

A alleged violation of 42 U. S. C. § 1983 does not require a plaintiff plead bad faith or that a municipal corporation intentionally did something dishonest or illegal. Anchorage's Docket 53 EXHIBIT A may or may not have been relied on by their employees in forming any good faith opinion regarding entry onto private property to gather information. The focus of municipal corporation liability in 42 U. S. C. § 1983 cases is on what the policy or custom is and how it operates in practice and while Anchorage's employees would be expected to provide input as to why Anchorage might need to enter private property to gather information. Individualized objective beliefs that Anchorage's policy or custom is constitutional is no more material than a shared belief by all Anchorage employees that Anchorage's policy or custom is constitutional. How a policy or custom came into existence may be relevant to discovery as it may lead to the policy or custom. When the merits stage of the case is reached Anchorage's ¶ 3 offers no relief.

## *STATE LAW IMMUNITY*

In *Martinez v. California*, 444 US 277, 283 (1980) dicta the court acknowledged federal judges do not pass judgment on the wisdom of the state policy determinations. The statement is in the context of state laws granting immunity to state actors and applies even to municipal corporations who are immunized under state laws. *Martinez* at 284 footnote 8 makes clear state law immunity defenses do not trump the supremacy clause of the U.S. Constitution, when allegations that federal rights have been violated are the bases of the claim federal law governs. Anchorage would no doubt plead a state law immunity defense when that defense is available. Federal courts exercising pendent

jurisdiction must follow applicable state law in litigating state law claims in federal court cases.

*Owen v. Independence*, 445 US 622, 635 (1980) is often cited for it's straightforward holding of no immunity for municipal corporations but it is the courts recognition that the question of immunity is one of statutory construction that allows, under a single undisputed set of facts, a municipal corporation to receive immunity against state claims while nearly identical federal claims must be decided on the merits. If Anchorage has been operating under the belief they have some form of federal immunity, they do enact and amend laws almost like a daily ritual, their only console is plaintiff won't live long enough to litigate all the potential federal violations.

## FEDERAL CONTROLING LAW

### *ISSUES TO BE DECIDED*

As *US v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) states, the parties frame the issues for the courts as neutral arbitrators to decide. Anchorage by pleading a affirmative defense places a burden on plaintiff to defend and the court to decide the issue. Rule 12(c) places a finality on the matter not available under Rule 12(f), Anchorage argues general principals of Rule 12(f) extensively along with a belief AS 29.45.130(b) is constitutional. Even if AS 29.45.130(b) is constitutional does not itself mean Anchorage's interpretation and any policy or custom they instituted in reliance of AS 29.45.130(b) follows the same route, the ultimate issue to be decided on the merits in the case is if a Fourth Amendment violation occurred as a result of a municipal policy or custom.

It should be understood Anchorage telling tax parcel owns they are acting under AS

29.45.130(b) (complaint EXHIBIT 3) and attempting to use AS 29.45.130(b) as a defense in litigation leads to much confusion at even this stage of the litigation.

A jury task with deciding, based on the facts of the case, if society as a whole considers Anchorage's behavior unreasonable with inclusion of a AS 29.45.130(b) defense, which appears to have a readability index somewhere north of a PhD Graduate in English, ask a lot of citizens many of whom desire no more than plaintiff, to enjoy the privacy guaranteed to all citizens within their own castle, be it a pup tent or a mansion.

## CIVIL/ADMINISTRATIVE INVESTIGATION

Anchorage for the first time introduces the term civil investigation into their argument, Docket 53 page 2 section I. Similar terminology is used in only one location in the Anchorage Municipal Code, § 1.60.150 - Civil investigative tools. AMC Chapter 1.60 - "False Claims And Whistleblower Protection" grants the Anchorage Department of Law almost limitless authority to investigate any person or business who interacts, in any way, with the municipality.

A 1950's to 1970's F.B.I. program to investigative and disrupt the civil rights movement, known as COINTELPRO, disclosed in Senate Hearings of the 94th Congress and published as Hearings Before the Select Committee to Study Governmental Operations with Respect to Intelligence Activities of the United States Senate, 94 Cong., 1st sess. Volume 6, Federal Bureau Of Investigation November 18, 19, December 2, 3, .9, 10, and 11, 1975 shows the power the words civil investigation encompass.

When the executive branch was denied relief in *United States v. United States Dist. Court for Eastern Dist. of Mich.*, 407 US 297, 324 (1972) they appear to have halted or

Anderson v Municipality of Anchorage
Reply To Opposition To Rule 12(c) Motion For Partial Judgment On The Pleadings
Case No. 3:21-cv-00139-MJK
Page 11

Case 3:21-cv-00139-JMK   Document 55   Filed 06/12/23   Page 11 of 16

alternated their practices, in society today that sometimes amounts to you're only lying if you get caught. Congress passed Senate Resolution 21 Jan 27, 1975 setting in motion a complete investigation of federal agency use of civil investigation tools, https://www.senate.gov/about/powers-procedures/investigations/church-committee.htm (visited 6-7-2023). The above mentioned Volume 6 was part of The Church Committee hearings.

In *Black Panther Party v. Smith*, 661 F. 2d 1243, 1248 footnote 19 (Court of Appeals, Dist. of Columbia Circuit 1981) the plaintiff's used information from The Church Committee documents to formulate their pleadings. Had Congress not made public the information on federal agency investigation practices many people and organizations would never have realized it was not bad karma but government investigation activities that created disruptions in their lives.

Congress enacted legislation to address The Church Committee conclusions and recommendations, the Attorney General created guidelines for F.B.I. Domestic Operations and other changes were made to get executive branch activities within compliance with the Fourth Amendment. Acts of Congress have not ended the controversy given part of the solution involves "in camera and ex parte" court review, see *Federal Bureau of Investigation v. Fazaga*, 141 S. Ct. 2720, 3-4 (U.S. 2021). In contrast real property ad valorem tax appraisal has never been found to implicate national security interest.

The precise meaning of Anchorage's tax appraisal civil investigation or how adding the word "civil" transforms AS 29.45.130(b) into a affirmative defense is not explained in

their opposition brief. Anchorage, at Docket 53 pages 2-3, only argues the merits of the case and references their own Rule 12(b)(6) motion to dismiss, not any controlling law in support of their merits argument. If Anchorage has a policy or custom what they did under that policy or custom will determining if a Fourth Amendment search occurred.

## *MUNICIPAL CORPORATIONS AS MONELL DEFENDENTS*

To the extent Anchorage's civil/administrative investigation is attempting to present a *Vives v. City of New York*, 524 F. 3d 346, 350 (2nd Circuit 2008) "policy in fact" argument it must fail. *Vives* at 349-358 municipal corporation Conscious Choice analysis is extensive and informative. Under the particulars of the case Vives created the controversy by violating a state criminal statute the district court found unconstitutional. The Second Circuit directed the lower court (at 358) solicit briefing from the Solicitor General (the state had already received a 28 U.S.C. § 2403(b) order from the district court, see *Vives v. City of New York*, 02 CIV. 6646, Certification Order (S.D.N.Y. Mar. 21, 2003)) and clarify the relationship between City of New York training manuals and department policy. Anchorage seemingly (at Docket 53 page 2) is attempting to distinguish criminal from non-criminal law, the Forth Amendment does not make that distinction and as *Vives* holds a factual finding on the policy or custom question is necessary before the 42 U.S.C. 1983 constitutional violation issue can even be recognized.

Plaintiff reads 28 U.S.C. § 2403(b) court orders as a form of preapproval for state intervention (within 60 days) whereas plaintiff's Docket 49 notice only serves as a good citizen notice to the State of Alaska requiring a Rule 24 motion and order before

Anderson v Municipality of Anchorage
Reply To Opposition To Rule 12(c) Motion For Partial Judgment On The Pleadings
Case No. 3:21-cv-00139-MJK
Page 13

Case 3:21-cv-00139-JMK   Document 55   Filed 06/12/23   Page 13 of 16

intervention can occur. In *Vives* the 2nd Circuit, while noting the states failure to respond under 28 U.S.C. § 2403(b) court orders, required the district court to go further. The State of Alaska has know for over 20 years a question on the constitutionally of AS 29.45.130(b) exist, out of site - out of mind is over. The state created and chartered Anchorage as a municipal corporation and the state benefits in numerous ways from ever dollar Anchorage properly appropriates and spends for a public purpose. If the state has arguments making AS 29.45.130(b) a cognizable affirmative defense they should be given every opportunity to come forward. It should not be lost the Commerce Clause permits any US citizen to become a citizen of any state in the union, neither plaintiff, defendant nor the court has cited any on point federal authority for the controversy before the court, as it stands Alaska is the test case for what is seldom seen, a question on a constitutional right that has a potential to impact every US citizens quality of life.

No police power are implicated in AS 29.45.130(b) which is the essence of government agents acting in secrecy, it permits absolute discretion by municipal government employees on who, when, how, why and how often they may enter single family residential private property and what they chose to investigate on that property. As Congress (The Church Committee conclusions) realized, allowing the executive branch to write their own investigative rules is far from adequate to protect citizen rights.

Anchorage employees have no doubt read AS 29.45.130(b) thousands of times since 1999 but the defendant is the Municipality of Anchorage, a municipal corporation, not their 3rd party employees. It is the power to be sued in it's corporate capacity that distinguishes Anchorage from it's employees (every employee has received notice under

42 U.S.C. § 1983 of any personal liability), as *Owen v. Independence*, 445 US 622, 645-646 (1980) finds, municipal immunity is necessarily nullified when the State expressly or impliedly allows Anchorage to be sued. Anchorage's answer (Docket 22 page 2 ¶ 7) to plaintiff's allegation they are subject to suit implied there is some question on the status of their ability to be sued, the court need only look at it's own docket for the proper answer.

## CONCLUSIONS

Anchorage has not shown through their Rule 12(c) opposition Anchorage's affirmative defense ¶ 3 is anything but a form of immunity defense. HORTON *BY HORTON v. City of Santa Maria*, 915 F. 3d 592, 603 (9th Circuit, 2019), municipal corporations have NO immunity defenses under "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes.", Act April 20, 1871, ch. 22, 17 stat. 13. *HORTON* controls plaintiff's Rule 12 (c) motion, Anchorage is seeking a remedy not available to them under law.

Anchorage must embrace the reality it is there policy or custom that is at issue in the case, any concerns they have regarding state law enactments should be addressed to the state, not plaintiff and the court.

Plaintiff is entitled to judgment on Anchorage's affirmative defense ¶ 3 as a matter of law, there are no allegations Anchorage has or could put forth in an amended answer to change clearly established law on the matter. Discovery could in no way bring out facts material to Anchorage's affirmative defense ¶ 3, plaintiff's knowledge Anchorage informs tax parcel owners they are acting under AS 29.45.130(b) is established at Docket 1

Exhibit 3 (and in general throughout the complaint pleadings), a Rule 10 Exhibit pleading whose authenticity is unquestioned by Anchorage. At the merits stage Anchorage is free to pursue any legal theories permissible without the need to confuse the matter with a AS 29.45.130(b) defense.

Should the State of Alaska pursue participation in the case plaintiff request the court follow Rule 1, plaintiff has no objection to State of Alaska timely briefing the issue as opposed to intervening and would only request an opportunity to respond. Based on record before the court, plaintiff respectfully request the court grant plaintiff's Rule 12(c) motion on Anchorage's affirmative defense ¶ 3.

Dated JUNE 12, 2023.       Robert Anderson
                           Robert Anderson, Pro Se

I, Robert Anderson certify that a copy of this paper filling was served, by HAND delivery to Municipality of Anchorage Office of the Municipal Attorney at 632 West 6th Avenue (P.O. Box 196650), Anchorage, AK. on JUNE 12, 2023.   Dated JUNE 12, 2023.    Robert Anderson
                                                                  Robert Anderson, Pro Se

Anderson v Municipality of Anchorage                                  Case No. 3:21-cv-00139-MJK
Reply To Opposition To Rule 12(c) Motion For Partial Judgment On The Pleadings    Page 16

Case 3:21-cv-00139-JMK   Document 55   Filed 06/12/23   Page 16 of 16