Robert Anderson
4908 Roger Drive
Anchorage, Alaska 99507
Phone (907) 223-1579

aktaxappeal@gmail.com



RECEIVED
FEB 29 2024
CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROBERT ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| Pro Se ) | Reply to Docket 81 |
| ) | |
| v. ) | |
| ) | |
| MUNICIPALITY of ANCHORAGE, ) | Case No. 3:21-cv-00139-JMK |
| ) | |
| Defendant. ) | |
| ) | |

## REPLY TO ANCHORAGE'S OPPOSITION TO SUMMARY JUDGEMENT

I, Robert Anderson, representing myself without a lawyer, reply to Anchorage's opposition to my Motion for Summary Judgment motion.

## INTRODUCTION

Anchorage characterizes their ad valorem tax scheme as meeting the minimum privacy requirements under the Fourth Amendment and argues they are not vicariously liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978) for their employees actions on July 11, 2019. Anchorage's theories focus on "mistake of fact" as a

cognizable defense or implied affirmative defense.

## VIOLATION OF THE FOURTH AMENDMENT

### I. *MISTAKEN CONSENT*

Anchorage first argues Mr. Song had consent from some unspecified party to enter my tax parcel, Mr. Song reasonably relied on that third parties apparent authority thus his entry was a valid exception to the warrant requirement, that is the question decided in *Illinois v. Rodriguez*, 497 US 177, 179 (1990). No supporting evidence has been produce by Anchorage, their theory goes directly to personal knowledge of Mr. Song. I am not aware of any person who would make a representation they had apparent authority (a person generally having joint access or control) over my premises and give consent to Mr. Song to collect data on my property. While I certainly believe all entries onto my tax parcel by Anchorage assessor personal were Fourth Amendment violations my claim before the court is the incident that occurred on July 11, 2019. Anchorage's response to interrogatory #15, Docket 76, Ex. 8 p 6 stated employees are to attempt contact, they failed to respond or objected based on my use of the word "consent", a term undefined by me. Anchorage now argues Mr. Song had third party consent and relied on that consent at the time he entered my tax parcel. A factual determination would have to be made by Mr. Song if he was speaking to someone identifying them self as someone other than me, he received consent from that person and had a reasonable belief that person had authority to consent. The facts in *Rodriguez* included Ms. Fisher had a key to the apartment and personal items stored in the apartment, *Rodriguez* at 179, she was determined to be a visitor and not a "usual resident" so even though she unlocked the door with her own key

she did not have authority to consent to a Fourth Amendment search of the apartment. Anchorage attempts to tie my 2000 notice to the mayor[1], clearly not consent by me, to a *Rodriguez* like mistaken belief. For the purpose of this claim I use the mayor's notice to show Anchorage knew or should have known their activities implicated the Fourth Amendment. Supreme Court president now forecloses the question of if a Fourth Amendment search has occurred.

Hill ( *Hill v. California*, 401 US 797 (1971)) is a case of mistaken identity, seizure of the wrong person on several factors specific to the case and not on point or relevant to the instant case.

The court in Brinegar (*Brinegar v. United States*, 338 US 160 (1949)) specifically distinguished any relevance of that holding to the home, *Brinegar* at 176 "No problem of searching the home or any other place of privacy was presented either in Carroll or here.". The court upheld the lower courts ruling, the question the 10th Circuit decided, *Brinegar v. United States*, 165 F. 2d 512, 515 ( 10th Ckt, 1947):

> The question presented then is whether the investigators, having sufficient information to suspect Brinegar, but not sufficient information to constitute probable cause for a search of the coupe and the arrest of Brinegar, could, after stopping him and interrogating him with respect to whisky in the coupe, lawfully act upon the information obtained as a basis for probable cause for the search and seizure.

Like *Rodriguez* and *Hill*, *Brinegar* involves interactions with people and objective reasonableness of enforcement officers actions, Anchorage argues virtually ANY

---

[1] Docket 76 Ex. 20

"mistake in fact" creates an exception to the Fourth Amendment. My case as it stands is not a "mistake in fact" relied on by Mr. Song in entering my tax parcel and conducting a Fourth Amendment search. Anchorage's policy or custom is the driving force behind Mr. Song's entry and actions.

*Heien v. North Carolina*, 574 US 54, 61 (2014) cites *Rodriguez, Hill* and *Brinegar*, all three cases are related to enforcement of laws for community protection, *Rodriguez* had assaulted Ms. Fisher, *Hill* was involved in a armed robbery, *Brinegar* was arrested for violating the Liquor Enforcement Act of 1936[2], § 3, 27 U. S. C. A. § 223. *Heien* argued the facts specific to his "mistake of law" issue were distinguishable from "mistake in fact" cases, he had violated no law therefor there was no reasonable suspicion for the stop. The court noted historically, *Heien* at 62, " that reasonable mistakes of law, like those of fact, would justify certificates of probable cause".

The whole line of "mistake of law" and "mistake in fact" cases relate to individual enforcement officers objective belief they are acting within the limitations of the constitution. While such cases seldom turn on enforcement officer training programs it is common sense the more thoroughly a officer understands the law the less likely mistakes are to occur. Closely related is enforcement officers acting under color of unconstitutional laws which typically involve qualified immunity defenses.

No natural person is a defendant in the instant case, Anchorage has presented no evidence in their opposition to my motion that Mr. Song was acting on a "mistake in

---

2 *Brinegar v. United States*, 165 F. 2d 512, 513 (10th Ckt. 1947)

Anderson v Municipality of Anchorage  Case No. 3:21-cv-00139-MJK
Plaintiff's Reply to Opposition to Summary Judgment  Page 4
Case 3:21-cv-00139-MJK   Document 85   Filed 02/29/24   Page 4 of 15

fact". Anchorage at Docket 76, Ex. 15 p 3, Request for Production 7 stated not a single document exist for handling citizen complaints or concerns regarding entry onto single family detached dwelling tax parcels by Department of Finance employees. Anchorage at Docket 76 Ex. 8 p 7 #19 seeking complaint information answered "no responsive documents have been located". Taken as a whole Anchorage's policy or custom includes avoiding a paper trail of any sort, the only written evidence of dwelling occupants questioning Anchorage policy or custom is recording of "leave immediately" tax parcels in Docket 76 Exhibits 36, 37 & 38 (the xlsx files) coded under Docket 76 Ex 6 p 40 as a type 4 entry, "4 = Owner refused to allow an inspection, land & improvement information estimated.".

No doubt knocking on thousands of doors every year produces a cross section of responses. It is not the persons with authority to waive (and knowingly doing so) their Fourth Amendment right but the persons that value privacy and if requested to consent to a Fourth Amendment search would refuse. Anchorage's Residential Appraisal Manual Addendum 3, Docket 76 Ex 6 p 104 shows no intent to acquire consent, field appraisal employees are informed they are acting under authority of AR 86-295 color of law and dwelling occupants are informed appraisers are acting under AS 29.45.130(b), Docket 76 Ex. 33 p 1[3]. The same form letter was included in my 2020 tax appeal, Docket 76, Ex. 19 p 212, I found no door hanger in 2020 but that alone is not conclusive a entry on my tax parcel did not occur. Anchorage was unable to respond to inquiry into those "To whom it

---

3 The court should take note this document is dated months after my complaint was filled.

may concern letters", Docket 76, Ex 8 p 6 #16.

Mr. Song preformed his job duties as directed by Anchorage, Docket 76, Ex 8 P 5-6 #13 & #14. There is no objectively reasonable probable cause inquiry relevant to Mr. Song actions. Anchorage's theory raises no genuine issues of material fact, they go straight to a conclusion "mistake" is a defense available to them without addressing the underlying factual bases required for such arguments to be cognizable.

## II. CURTILAGE AS IT RELATES TO FOURTH AMENDMENT PROTECTIONS

I have argued the *United States v. Dunn*, 480 US 294, 301 (1987) factors should not be controlling law for civil privacy determinations under the Fourth Amendment involving tax parcel appraisal. While courts issue bench rulings on the curtilage question in criminal cases it is in the truest sense a factual question for a jury to decide in a civil rights complaint if summary judgment creates a question of material fact. I have surrender a portion of my privacy to meet the *Dunn* factors analysis, requiring every dwelling occupant to do the same infringes on the very privacy the Fourth Amendment is intended to protect.

Anchorage's wishes me to construct a obstacle course to prevent their appraisal employees from viewing areas of my tax parcel I wish to protect from tax appraisal personnel.

The curtilage is recognized as a protected area under the Fourth Amendment, a part of the house to which the warrant, consent or exception principals of the Fourth Amendment apply. Portions of a curtilage are undoubtedly semi-private, Fourth

Anderson v Municipality of Anchorage
Plaintiff's Reply to Opposition to Summary Judgment
Case 3:21-cv-00139-MJK Document 85 Filed 02/29/24 Page 6 of 15
Case No. 3:21-cv-00139-MJK
Page 6

Amendment protections against government intrusions are not diminished because an area of the curtilage is semi-private. *Florida v. Jardines*, 569 US 1,7 (2013) "The front porch is the classic exemplar of an area adjacent to the home and "to which the activity of home life extends."" and typically visible from a considerable distance, it is still part of the curtilage and can be viewed by government agents in a lawful location.

Anchorage has every right to view my tax parcel from public property, a question of lawfulness arises when entry is made into the curtilage of my private property.

Anchorage appraisal employees viewed the backyard of every tax parcel included in Docket 76 Ex. 18 & 35 (color photographs). No form of tax parcel occupant improvements prevented appraisal employees form viewing at least some portion of backyards, moving freely around private property allows views from one tax parcel to an adjunct tax parcel which are not available from public property. It is certainly possible Mr. Song could have viewed my next door neighbors backyards from my backyard.

While criminal enterprises may well realize under a cost-benefit analysis certain *United States v. Dunn*, 480 US 294, 301 (1987) Dunn factors offer protections when erected on residential private property not necessary available to equivalent criminal enterprises where those protections are not erected, that is a business decision. A notch down are circumstances like recreational use of marijuana[4] within the constitutionally protected area of ones house. Under *Dunn* deciding to erect a 8' tall obstructed view fence[5] requires a personal choice to forgo desirable views which would otherwise be

---

4  A Schedule I substance under the Controlled Substances Act.
5  A government organization need only recruit a 7' tall person to get past a 6' obstruction

Anderson v Municipality of Anchorage  Case No. 3:21-cv-00139-MJK
Plaintiff's Reply to Opposition for Summary Judgment  Page 7

Case 3:21-cv-00139-MJK  Document 85  Filed 02/29/24  Page 7 of 15

available from ones property and a financial commitment necessary for construction. Courts determining the curtilage question under the *Dunn* factors do not weigh personal choice factors or the financial ability of a property owner to erect the fence but only if a fence exist.

Anchorage refers to my Use and Enjoyment declaration as "alleged facts", see Docket 81 page 6, that would increase the area protected. My dwelling occupies approximately 789 square feet of a 8,200 square foot lot, Docket 76, Ex. 19 p 2. Anchorage is arguing a curtilage area of 7,411 square feet is a large area not justifying a curtilage classification. The 9th Circuit in *Conner v. City of Santa Ana*, 897 F. 2d 1487, 1494 (1990) informed the city in a criminal context "The meaning of curtilage may not be exact; it does, however, give sufficient notice to the City.", *Conner* had received permanent injunctive relief from further warrantless entries by the city (at 1493).

My declaration is made on personal knowledge, in the first instance the court determines the curtilage based on evidence presented to the court, Anchorage has not provided any evidence of how the Department of Finance determines a curtilage, given their knock and talk policy they are clearly within the curtilage of every tax parcel they enter, "The front porch is the classic exemplar of an area "to which the activity of home life extends."", *Florida v. Jardines*, 569 US 1,7,(2013).

Anchorage's knock and talk policy itself requires an exception under the Fourth Amendment, there is no absolute right under the Fourth Amendment for government agents to enter residential private property to engage dwelling occupants or as in my case proceed with data collection when a knock is not answered. Law enforcement has been

Anderson v Municipality of Anchorage  
Plaintiff's Reply to Opposition for Summary Judgement  
Case No. 3:21-cv-00139-MJK  
Page 8  
Case 3:21-cv-00139-MJK Document 85 Filed 02/29/24 Page 8 of 15

permitted to use knock and talk in certain investigation circumstances, extending that technique to tax appraisers opens a plethora of concerns,

(1) how are dwelling occupants informed of impending entry,

(2) is tax appraiser cold calling even reasonable,

(3) how is it determined who has authority to make a waiver decision,

(4) are all dwelling occupants capable of intelligent and knowledgeable wavier of Fourth Amendment rights,

(5) how are adjacent tax parcels protected given viewing is being conducted from nonpublic areas.

Anchorage has presented no argument or evidence knock and talk is proper for their tax appraisal procedures, their focus is on ATTEMPTING TO COLLECT A TOTALLY OF DATA on every tax parcel. Anchorage in responding to my interrogatory #15, Docket 76, Ex. 8 p 6 considered the word "consent" to vague to answer the interrogatory, they stated employees attempt to contact dwelling occupants to inform the occupants they are there to conduct a search under color of law.

The law clearly established in the 9th circuit in 2015 under *Lyall v. City of Los Angeles*, 807 F. 3d 1178, 1186 (2015) informed Anchorage their department of finance employees are conducting Fourth Amendment searches, "when the government "physically occupie[s] private property for the purpose of obtaining information," a Fourth Amendment search occurs, regardless whether the intrusion violated any reasonable expectation of privacy.". *Katz v. United States*, 389 US 347, 361 (1967) reasonable expectation of privacy test is history on private property.

Taken as a whole Anchorage's curtilage "mistake in fact" defense is a failure of Anchorage to follow Fourth Amendment president in entering private property to gather information. The Fourth Amendment is a fundamental federal right, Anchorage has cited no case law supporting their contentions (under the facts of the case) violations do not occur as results of mistake of fact or failure by me to shield particular areas around my house. In the criminal context evidence is excluded when obtained through constitutional violations involving the curtilage. There is no like remedy for tax appraisal violations, controlling lawful entry is necessary to protect dwelling occupant privacy.

The law on Fourth Amendment private property searches is clearly established, Anchorage's property appraisal employees enter private property for one purpose, to gather information, their actives fall squarely under the Fourth Amendment and must meet that constitutional protections minimum standards.

## THE MONELL LIABILITY PRINCIPAL

One defendant is named in my complaint, Anchorage. I identified the Anchorage employee who violated my constitutional right, Docket 76 Motion for Summary Judgment on Claim I, page 8. I have expressed my opinion my claim is a matter of first impression, Fourth Amendment law regarding municipal corporation programmed inspections of single family residential properties by tax assessors for tax appraisal purposes is the matter before the court. I do not dispute if Mr. Song did not violate my privacy rights on July 11, 2019 Anchorage has no liability.

Anchorage, in responding to my summary judgment motion, has produced no evidence to create a factual dispute, if the court finds my evidence admissible those are

Anderson v Municipality of Anchorage  Case No. 3:21-cv-00139-MJK
Plaintiff's Reply to Opposition to Summary Judgment  Page 10

Case 3:21-cv-00139-MJK   Document 85   Filed 02/29/24   Page 10 of 15

the facts upon which the motion must be decided. The interpretative or conclusionary statements made by Anchorage, see Docket 81 page 4-5 Anchorage explanation of AR 86-295 and Residential Manual Addendum 4 policy, are self serving, contradict evidence (Anchorage public records) of numerous entries into single family residential back yards, Docket 76 Ex. 18. The Fourth Amendment has no "demand to leave" notice provision. Government agents, Anchorage tax appraisers included, must be lawfully on private property when preforming job duties.

Anchorage, a municipal corporation and political subdivision of the State of Alaska, can incur liability for a single violation of a legislatively enacted policy or custom. That has never been in doubt, *Pembaur v. Cincinnati*, 475 US 469, 480 (1986):

> **No one has ever doubted**, for instance, that a municipality may be liable under § 1983 for **a single decision by its properly constituted legislative body** — whether or not that body had taken similar action in the past or intended to do so in the future — **because even a single decision by such a body unquestionably constitutes an act of official government policy.** See, e. g., *Owen v. City of Independence*, 445 U. S. 622 (1980) (City Council passed resolution firing plaintiff without a pretermination hearing); *Newport v. Fact Concerts, Inc.*, 453 U. S. 247 (1981) (City Council canceled license permitting concert because of dispute over content of performance).

Anchorage's argument amounts to each of the approximately 40,000 single family detached dwelling tax parcel owners in Anchorage must seek their own injunction or forgo Fourth Amendment privacy rights. Should it be determined proper to issue a injunction the court inherent powers permit it to issue appropriate relief.

Anchorage has made broad arguments in opposition to my motion for summary

Anderson v Municipality of Anchorage  
Plaintiff's Reply to Opposition to Summary Judgment  
Case No. 3:21-cv-00139-MJK  
Page 11

Case 3:21-cv-00139-MJK   Document 85   Filed 02/29/24   Page 11 of 15

judgment. Anchorage has not attempted to show even a single paragraph in their pleading is accurate. Anchorage has not produced a single affidavit disputing material facts. Anchorage's discovery consisted of the parties exchange of Rule 26 initial disclosures. Anchorage's case strategy required considerably more effort by me to obtain any information, they approach tax appraisal as if national security interests are involved.

## MISTAKE OF FACT AS A SPECIAL NEEDS DEFENSE

To the extent Anchorage's "mistake of fact" is for activity beyond the normal need for law enforcement, "special needs, beyond the normal need for law enforcement", *Indianapolis v. Edmond*, 531 US 32, 37 (2000) and the court reads Anchorage's theory as a special needs exception, Docket 22, p 13 affirmative defense #4, to the Fourth Amendment Anchorage must go beyond stating a desire to enter every tax parcel at their convenience. It can not be disputed when the government enters private property to gather information a Fourth Amendment search occurs, that is precisely what Anchorage does under their policy or custom.

Anchorage's interest in appraising all tax parcels within their jurisdiction and tax parcel owners/dwelling occupant interest in privacy are in conflict. At a minimum Anchorage must show their on-site attempts to collect all data they have determined necessary for appraisal actually produce greater uniformity. Several of the tax parcels in Docket 76, Ex. 17 p 6,9,15, 18, 21, 31, 38 & 57 indicate "desk edit", modifications to tax parcel data under Residential Appraisal Manual, section 453, see Docket 76, Ex. 6 p 41. Almost 40% of the sampled tax parcels have received data modifications outside the Addendum 4 Quick Reinventory Procedure, several desk edits note no inspection.

Anderson v Municipality of Anchorage  
Plaintiff's Reply to Opposition to Summary Judgment  
Case No. 3:21-cv-00139-MJK  
Page 12

Case 3:21-cv-00139-MJK Document 85 Filed 02/29/24 Page 12 of 15

Anchorage needs to explain why and how their Addendum 4 Quick Reinventory Procedure data is so often modified.

Under constitutional due process natural feedback loops exist, board of equalization appeals (when their procedures meet constitution minimums) and overpayment suits are indicators of uniformity. High percentages of board of equalization appeals indicate either a failure to adequately explain how tax parcel values have been determined or lack of uniformity including outliers. It is a policy decision how much tax information to provide the public but when extensive information such as provided by Washington DC "Assessment Materials and Reports" at https://otr.cfo.dc.gov/node/432852 (visited 2/28/2024) is avail to taxpayers confidence in a fair and equitable tax scheme likely rises. Operating under a clock of secrecy likely has the opposite effect.

It is unlikely expert opinion is available on Anchorage's "total information awareness" thru data collection on something resembling every single family detached dwelling tax parcel. Anchorage appears to read AR 86-295 as a substantial compliance law, Docket 76 Ex. 37 (xlsx file) does not indicate compliance to a strict 6 year interval. The Supreme Court in *CSX Transp. v. Georgia State Bd. Of Equal.*, 552 US 9, 17 (2007), said "the calculation of true market value is an applied science". Docket 76 Ex. 25 p 16 5.2.1 explains a properly preformed Sales Ratio Study under IAAO standards should have a median ration between .90 and 1.10. Because Sales Ratio Studies are looking at historical performance they can help show performance levels and uniformity. Anchorage reported exceptional performance, Docket 76 Ex. 24 p 19 but excluded over 25% of know sales values, Ex. 24 p 20. Anchorage, at Docket 76 Ex 8 p 3, identified no alternate

Anderson v Municipality of Anchorage  
Plaintiff's Reply to Opposition to Summary Judgment  
Case No. 3:21-cv-00139-MJK  
Page 13

Case 3:21-cv-00139-MJK Document 85 Filed 02/29/24 Page 13 of 15

sources other than Residential Appraisal Manual, section 451 (pertaining to vacant land), 452 (quick reinventory on steroids), and 453 (unverified owner supplied data) for acquiring tax parcel information. IAAO at Docket 76, Ex. 25 p 10 3.3.4 identifies building permits as the most efficient means for acquiring change information, aerial photography (possibility involving state policy considerations), self reporting, information derived from multiple listing sources, and third party sources. Anchorage has not identified any of those sources as means utilized by them.

My main entrance door is probably less than 50' from the public roadway, if I significantly altered my dwelling improvement it would likely be detectable from the public roadway.

Anchorage has not produced any evidence disputing material facts ascertainable from admissible evidence. Anchorage seems to be offering to stay off my property, the cases reach is far greater. Anchorage has failed to provide any persuasive authority or facts relevant to their affirmative defenses. A matter of first impression has no judicial precedent, the court must look to persuasive authority particular to Fourth Amendment with due regard to societies historical consideration of privacy on private property.

Both parties have had fair opportunity to present their theories and evidence for the courts consideration. Based on the fillings before the court summary judgment is proper on my motion.

## EXPLANATION OF FILINGS

FRCP Rule 7(b)1(B) requires Anchorage's res judicata and Tax Injunction Act motions stand on their own two wobbly feet. It is unclear to me the purpose of local rules

Anderson v Municipality of Anchorage  
Plaintiff's Reply to Opposition to Summary Judgment  
Case 3:21-cv-00139-MJK Document 85 Filed 02/29/24 Page 14 of 15  
Case No. 3:21-cv-00139-MJK  
Page 14

5.1(f) and 7.1(e) but FRCP Rule 1 requires I be given notice and opportunity to respond to a opponents motion. I am filing this reply and separate responses to Anchorage's res judicata and Tax Injunction Act motions.

The court will decide Anchorage's dispositive motions before reaching my constitutional question. If the court grants either of Anchorage's motions my motion is moot, if the court denies both Anchorage motions those res judicata and Tax Injunction Act sections of their Docket 81 opposition are moot. No inequity occurs.

Dated February 29, 2024. Robert Anderson, Pro Se

I, Robert Anderson certify that a copy of this paper filling was served, by HAND delivery to Municipality of Anchorage Office of the Municipal Attorney at 632 West 6th Avenue (P.O. Box 196650), Anchorage, Ak. on 2/29, 2024.

Dated 2/29, 2024 Robert Anderson, Pro Se

Anderson v Municipality of Anchorage
Plaintiff's Reply to Opposition to SJ Motion
Case No. 3:21-cv-00139-MJK
Page 15
Case 3:21-cv-00139-MJK   Document 85   Filed 02/29/24   Page 15 of 15